THE STATE, JACOB MUELLER, PROSECUTOR, v. EGG
        HARBOR CITY ET AL.

1. Under the charter of Egg Harbor City, it is competent for a majority
   of the whole number of members of council to which the city is entitled, when convened, to pass ordinances, although there may be some
   vacancies in council.
2. The act of 1891 (*Pamph. L.*, *p.* 83), which makes Saturday afternoon
   a legal half holiday, does not apply to proceedings taken by the common council of a municipal corporation. An ordinance may lawfully
   be passed on Saturday afternoon.
3. As a general rule the legal existence of a corporation cannot be inquired into collaterally, although some of the legal formalities in its
   organization may not have been observed.
4. In virtue of the acts of May 9th, 1884 (*Rev. Sup.*, *p.* 654, *pl.* 723), the
   act of April 17th, 1884 (*Rev. Sup.*, *p.* 655, *pl.* 725), and the act of
   1888 (*Pamph. L.*, *p.* 366), the common council of Egg Harbor City
   had power to pass the certified ordinances.
5. If the water company is without the requisite authority to lay its
   pipes in the public ways, that question cannot be litigated in this
   suit. The individual whose property is invaded without authority
   must invoke a different remedy for his redress.

On *certiorari*.

Argued at November Term, 1892, before Justices VAN
SYCKEL and MAGIE.

For the relator, *August Stephany.*

For the defendants, *Charles A. Baake* and *John J.
Crandall.*

The opinion of the court was delivered by

VAN SYCKEL, J.   This writ brings up an ordinance of
the common council of Egg Harbor City, authorizing the
Egg Harbor City Water, Electric Light and Power Company of New Jersey to construct, maintain and operate a
system of water works in said city to supply the inhabitants

thereof with water for domestic purposes, for protection against fire, for sprinkling the streets and for manufacturing purposes, passed February 20th, 1892, the legality of which ordinance the relator denies.

The first reason relied upon for reversal is, that the common council was not legally constituted on the 20th of February, 1892, when the ordinance was passed.

The charter of Egg Harbor City (*Pamph. L.* 1868, *p.* 20, § 2) provides that there shall be a mayor and nine members of the common council, who shall constitute the common council of said city.

. Section 3 provides that a majority of the whole number of members shall be a quorum to transact business.

Section 10 provides that it shall be lawful for a majority of the whole number of common council that may be assembled in council meeting convened to pass ordinances.

It appears from the evidence taken in the cause that at the time this ordinance was passed there were two vacancies, by resignation, in the common council, which the mayor, by virtue of the act of February 5th, 1880 (*Rev. Sup., p.* 511, *pl.* 31), had power to fill, but which had not then been filled.

It is contended that an ordinance could not legally be passed while these vacancies existed. *People* v. *Nostrand,* 46 *N. Y.* 375, is relied upon to support this proposition. In that case the statute authorized three commissioners to lay out and construct a public highway. It conferred the power upon three, and provided that whenever the number of commissioners was reduced below three the vacancy should be filled by the county judge.

The New York Court of Appeals held that the legislature had entrusted the powers conferred to three persons, and that the judgment of the whole number was requisite to the discharge of their duties. The power was delegated to three persons, not to their survivors or to a majority, and provision was made to fill vacancies, so that three should at all times be in office.

In the New York case the authority was bestowed upon three persons, with no power to a less number to act.

In the case before us a special local tribunal is created, with an express provision that it shall be lawful for a majority of the whole number, when convened, to pass ordinances, and that a majority of the whole number shall constitute a quorum to transact business.

The charter requires the concurrence of a majority of the whole number to pass ordinances.

In this instance, six members convened and voted for the ordinance. A quorum was, therefore, present, and a majority of the whole number of members voted in the affirmative. A legislative body thus constituted is not rendered incompetent to act, by the death or resignation of one or more of its members, so long as there continues to be the quorum required by the statute.

It has never been supposed that the death of a member of a state legislature suspended its power to enact laws until the vacancy was filled.

The provisions of this charter are in the common form, and are designed to preserve and perpetuate the authority of the local legislative body in the presence of such contingencies as have happened in this case.

The common council was legally constituted, and the ordinance was passed by the requisite vote. 1 *Dill. Mun. Corp.*, §§ 215–221.

The second reason for reversal is that the ordinance is void because it was passed on the afternoon of Saturday, February 20th, 1892, which, by the act of 1891 (*Pamph. L., p.* 83), was a legal half holiday.

The first section of that act provides that the days and half days therein specified shall be considered as the first day of the week, commonly called Sunday, and as public holidays or half holidays, for all purposes whatsoever as regards the transaction of business in the public offices of this state or counties of this state; on all other days or half days, except-

ing Sundays, such offices shall be kept open for the transaction of business.

This provision clearly applies only to the public officers of the state and to the public officers of the counties of the state, requiring them to close their several offices on such legal holidays. It does not, in terms or by implication, inhibit municipal legislation. If the language used would justify an inference against the right of the common council to act, it would be repelled by the third section of the act, which provides that it shall not be construed as interfering with any person or corporation transacting business in this state, either private or public.

Municipal corporations transact public business and are embraced by the term "corporations" in this section.

. The ordinance is not invalid because passed on a half holiday. Other reasons assigned for reversal relate to the alleged want of power to pass the ordinance under review.

The tenth section of the charter of Egg Harbor City gives the common council authority, among other things, to pass ordinances for lighting the streets, and for regulating the laying of gas or other pipes in or under the same, for sinking and regulating wells, cisterns and pumps in said streets.

As a general rule, the legal existence of a corporation cannot be inquired into collaterally, although some of the legal formalities in its organization may not have been complied with. Ordinarily, such an inquiry can only be made in a direct proceeding brought in the name of the state. *Vanneman* v. *Young*, 23 *Vroom* 403.

The Egg Harbor City Water, Electric Light and Power Company of New Jersey is organized under the General Corporation law.

The act of May 9th, 1884 (*Rev. Sup.*, p. 654, *pl.* 723), gives the city council of any municipal body in this state, power "to enter into and make a contract with any aqueduct board or water company, for a term not exceeding ten years, for the obtaining and furnishing of a supply of water to be used by and within such corporation for the purpose of extin-

guishing fires, and for such other public uses and purposes as may be found necessary or convenient;" and the supplement of April 17th, 1884 (*Rev. Sup., p.* 655, *pl.* 725), confers upon such municipal body "the right to supply the inhabitants thereof with water upon such terms as may be agreed upon."

The act of 1888 (*Pamph. L., p.* 366) authorizes the city "to make and enter into a contract with any water company or other company, contractor or contractors, for a term not exceeding twenty-five years, for the obtaining and furnishing a water supply."

In *Conger* v. *Summit Township*, 23 *Vroom* 483, it was held that this legislation gave to municipal corporations charge or control of their water supply and power to enter into contracts, in accordance with the provisions of said acts.

In the case cited it was also adjudged that if the water company was without power to lay its pipes in the public ways, that question could not be litigated on *certiorari.* Whether the power of the company is infirm in that particular cannot be challenged in this proceeding. The individual whose property is invaded without authority must resort to a different remedy for his redress.

In my judgment, the city acted within its grant of power in passing the certified ordinance, and the remaining reasons for reversal show no fatal infirmity.

The statement in the evidence taken in the cause, that the said ordinance had been repealed since it was certified into this court, cannot be considered, and is not assigned as one of the reasons for reversal.

The only question presented to the court by the record is whether the ordinance was legally passed.

In my opinion, the proceedings below should be affirmed.