THE STATE, SAMUEL DODD, PROSECUTOR, v. BOARD OF POLICE COMMISSIONERS OF THE CITY OF CAMDEN.

1. A chief of police cannot, in proceedings to try him for official misconduct, attack the constitutionality of the law creating the board of police commissioners under whom he serves and who are trying him.
2. Where, upon the trial, such board finds him guilty of four charges and sentences him to dismissal from the police force, upon such findings as to all the charges, and three of them are adjudged by this court to have no rational basis to support them upon the case as presented to this court, the judgment of dismissal will be set aside, and thereafter the board may proceed to sentence him upon the charge proved or may open the case before them for both sides to introduce new testimony, and may, after hearing the same, proceed to render judgment upon all the evidence as to each of the written charges served upon the chief and upon which he is to be tried.

On *certiorari.*

Argued at November Term, 1893, before Justices DEPUE, LIPPINCOTT and ABBETT.

For the prosecutor, *David J. Pancoast.*

For the defendant, *Alfred Hugg.*

The opinion of the court was delivered by

ABBETT, J. The writ in this case brings up for review the proceedings of the board of police commissioners of the city of Camden, in trying, convicting and dismissing Samuel Dodd, chief of police of Camden, upon the following charges :

*Second.* On two occasions, one Ralph Bond, a police officer, was reported to Samuel Lee, a lieutenant of police, as having been drunk whilst on police duty, and, notwithstanding such report, the said Bond is still retained on the police force, the said chief having made no charge against him.

*Fourth.* Discharging or permitting the discharge of prisoner John Keefe from custody without bail or hearing.

*Fifth.* Not exercising such control over the police force as to command their respect and obedience to his lawful commands; using vulgar, profane and indecent language in presence of the force.

*Sixth.* Neglecting and refusing, for the space of about three months, to produce the prisoners before Harry B. Paul, police justice, for hearings under the law, after the said police justice had been duly qualified to act as such justice.

The prosecutor seeks to raise the question of the constitutionality of the act creating the board and giving them power over the police force of the city of Camden. If this question was still open for discussion it cannot be raised by the prosecutor. *Ayers* v. *Newark,* 20 *Vroom* 170, 175. The board had power to try the chief of police, and if he had been guilty of misconduct it had power to remove him from office. There must, however, be a legal and substantial basis shown for his removal, upon which the commissioners acted within their authority. The court will not, however, weigh the evidence on the facts presented. *Ayers* v. *Newark, Id.* 173. Whether the evidence is weak or strong, it is sufficient if it formed a rational basis for the judgment against him. *Devault* v. *Mayor of Camden,* 19 *Id.* 433, 435.

There is no proof presented to this court that the conviction and dismissal were for political reasons, as alleged in the fifth reason.

The prosecutor had charges alleged against him in writing, signed by two of the board. This will be sustained under the authority of *Ayers* v. *Newark,* 20 *Vroom* 172. The causes alleged, if true, showed incapacity or misconduct with reference to his official position or disobedience to some just regulation established for the department; he had a public trial upon these charges after due notice, and was represented by counsel; witnesses were called and examined and cross-examined on both sides, and the board adjudged him guilty. These proceedings and their result are therefore controlling upon this court, upon the authority of the cases cited, if there

was evidence, whether weak or strong, which "formed a rational basis for the judgment against him."

The evidence upon the second charge, in our judgment, did not show a rational basis for finding him guilty thereon, because the prosecutor swears—and his testimony is not contradicted—that he did report to the mayor the first charge made against Ralph Bond, as to his being drunk while on police duty; and as to the second like charge against Bond, he says that he investigated the charge and found that it was not true.

The evidence of the prosecutor himself shows, on the fourth charge, that he released O'Keefe—either Michael or John Keefe—and it charged he did so without lawful authority. It is clear that he had no authority to release this man unless, as he claims, rule 35 applies to this case. This rule provides that "In case of persons found violating the provisions of any city ordinance, they will be brought to the city hall, and if court be in session, will be sent before the police justice at once, but should court not be in session and the prisoner be a resident of this city, it will be the duty of the chief to take the name and address of the prisoners and direct them to be in court at its next session following. In the case of non-residents arrested on such charge, they will be detained till court opens or admitted to bail." The prosecutor did not bring himself, by proof, within this exception, and if the proof had shown that it was John Keefe that had been released there would have been a rational basis for his conviction upon this charge. It would seem, however, from the record, that it was Michael Keefe that he released, and no charge had been alleged against him in writing, charging him with improperly releasing Michael Keefe. He was entitled to such notice to put him on trial therefor.

In reference to the fifth charge, there is evidence upon which their finding of guilty can be supported under the cases cited. Isaac Shreve testified that he heard the chief of police use vulgar, profane and indecent language in the presence of others; that he has heard him use oaths in the presence of the

force; that he has done it to him. George W. Day also testifies to his use of profane language. The chief, when examined, did not say that he never swore in the presence of the force. All that he was asked was if he was *accustomed* to swear in the presence of the force. He was asked: "You are not in the habit of using profane language before your force or any other place?" He answered: "I may sometimes, but not in the discharge of my duties." When asked if he was in the habit of using profane language, &c., he said: "No; I may sometimes, but don't do it very much." Under the rule laid down by the Supreme Court, in the cases cited, this evidence formed a rational basis to find him guilty of the latter part of the fifth charge, and we have no power to say that the finding was based upon insufficient evidence, contrary to the proofs in the case, as alleged in the fourth reason.

The evidence shows that the chief was sick and another officer was in charge during the time referred to in the sixth specification, and there is, therefore, no rational basis upon which this charge can be supported.

If the board had only found the prosecutor guilty of the charge of using vulgar, profane and indecent language in presence of the force, as stated in the fifth charge, we would, under the cases, have been compelled to dismiss this writ, but the board found the chief guilty upon all four of these charges, two of which, in our judgment, have no rational basis to support them, for lack of evidence either weak or strong; and as to the fourth charge, it cannot be supported, because the prosecutor was served with a written charge for improperly releasing John O'Keefe, when the attempted proof related to Michael O'Keefe, another individual.

The board had power to punish the prosecutor for violation of duty or improper official conduct, by dismissal or by a less severe sentence. In inflicting the severest punishment possible for them under the law, the board based their judgment upon their finding that the chief was guilty of all four of the offences charged. This judgment of dismissal was

based upon conclusions which cannot be supported as to three of the charges in the case as presented to us, and must therefore be set aside. This disposition of the case will leave the board free to take up the trial at the point where the testimony closed, and allow it to render such judgment on the charge proved as shall be just and proper, or the board may open the case and let in further testimony on either side as to any of the written charges served upon the prosecutor, and thereafter render any proper judgment authorized by the proofs.