THE STATE, THOMAS J. McGOVERN AND JOSEPH MARTIN PROSECUTORS, v. THE BOARD OF PUBLIC WORKS OF THE CITY OF TRENTON AND THOMAS CRAIG.

1. By section 107 of the charter of the city of Trenton, contracts for street improvements extending in cost to the sum of $200 and over must be awarded to the lowest bidder "who shall give satisfactory proof of his or their ability to furnish the requisite materials and perform the work properly," and the determination of who is the lowest bidder with this qualification rests not in the exercise of an arbitrary, unlimited discretion of the board, but upon the exercise of a *bona fide* judgment. based upon facts tending reasonably to the support of such determination.

2. There must exist a rational basis of fact to support this determination of the board, and, when this exists, the court will not weigh disputed evidence and facts in order to review the action of the board in the award of contracts under the section of the charter in question.

---

On *certiorari.*

Argued at November Term, 1894, before Justices DIXON, MAGIE and LIPPINCOTT.

For the prosecutors, *Carroll Robbins.*

For the defendants, *John Rellstab* and *Edwin Robert Walker.*

The opinion of the court was delivered by

LIPPINCOTT, J.   This writ brings up the order and determination by the board of public works of the city of Trenton, made on the 17th day of August, 1893, awarding to Thomas Craig a contract for paving a portion of Peters' alley in said city.

Section 107 of the city charter (*Pamph. L.* 1874, *p.* 385) provides that "all contracts for doing work and furnishing materials for any improvement provided under this act, extending in amount to two hundred dollars, shall be advertised for ten days in one or more daily newspapers printed and published in said city, and shall at all times be given to the lowest bidder or bidders, who shall give satisfactory proof of his or their ability to furnish the requisite materials and perform the work properly, and offer sufficient security for the faithful performance of the contract in regard to time, quality of material and work to be done."

This paving of the alley was an improvement within the city charter, the probable cost being about $4,000, and the awarding of the contract was regulated and controlled by this section 107 of the city charter.   The proceedings show the adoption of an ordinance for this improvement, and the provisions of the city charter were in all other respects complied with.   Due advertisement was made for proposals for the contract for the work and the material required, in accordance with the provisions of the charter, and two bids were received.   Both were for the paving with the same material, and both in proper form.   The bid of Thomas Craig was for $2.35 per square yard, and the other bid was from the prosecutor for $2.30 per square yard.   There was no objection to the bonds offered by the prosecutor.   The contract was by the order and determination of the board, on August 17th, 1893, awarded to Craig.   The contract was executed on August 30th, 1893, and the writ in this case was allowed the following day.

After the bids were presented, and before the contract was awarded, the matter was by the board referred to the committee on streets of the board of public works, and they, on August 17th, 1893, reported to the board as follows : " Your committee on streets, to whom was referred the proposals for paving Peters' alley with vitrified brick, respectfully recommend that the bid of Thomas Craig for paving the alley with Canton brick at $2.35 per yard be accepted, and a contract made with him in accordance with his proposal. A lower bid for paving with the same material was submitted by Thomas J. McGovern, but your committee are of opinion that Mr. McGovern has not given satisfactory proof of his ability to furnish the requisite materials and perform the work properly, but on the contrary he has failed in the opinion of your committee to properly perform similar work on a prior contract, and continues to neglect to perform said work." This report was signed by the members of the committee on streets, and presented at the meeting of August 17th, 1893. Mr. McGovern, the prosecutor, was heard upon the matter through counsel, upon which the board adopted the report and awarded the contract to Craig.

In the specifications upon which the bids or proposals were made, the board reserved the right to award the contract " to the lowest bidder or bidders who shall give satisfactory proof of his or their ability to furnish materials and perform the work properly, and offer sufficient security for the faithful performance of the contract in regard to time, quality of material and work to be done."

The reason assigned by the prosecutor for setting aside the contract awarded to Craig, is that the contract was not awarded to him as the lowest bidder within the true intent and meaning of section 107 of the charter, but was awarded to him without authority of law and in violation of the provisions of the charter; or, in other words, it is contended that the prosecutor was the lowest bidder with satisfactory proof of his ability to furnish the requisite materials and perform the work properly, and therefore the board violated the pro-

visions of the charter in awarding the contract to a higher bidder.

The ability of Craig, to whom the contract was awarded, to furnish the requisite materials and perform the work properly is not questioned, but considerable evidence has been taken in this case upon the question whether the prosecutor was of sufficient ability to furnish the requisite materials and perform the work properly. It is shown that there had been some difficulty between him and the board in relation to the paving of Greenwood avenue, for which the prosecutor had obtained a contract from the board for paving with the same quality of brick as required for the paving of Peters' alley. In the performance of the contract for paving Greenwood avenue, it is shown by the evidence some material had been rejected which had been furnished, and that the work to some extent had not been done to the satisfaction of the board, and that the prosecutor had been compelled, after it was finished, to take out defective brick which had been placed in the paving and replace it with better brick, and that for these reasons payment to the prosecutor had been delayed. Upon these points there is some variance in the evidence, but the court here does not intend, nor is it necessary, to determine whether or not the prosecutor performed his contract for the work on Greenwood avenue. It is sufficient, for all the purposes of this case, to ascertain that facts did exist before and within the knowledge of the board upon which a judgment could be expressed upon the question whether the contract had been duly performed, and that there were upon this question facts upon which the board could exercise the judgment permitted to the board in the determination by them whether the prosecutor, as the lowest bidder, possessed the qualifications which they were entitled to demand.

The question then arises here whether this court, under the evidence, can review the judgment and discretion of this board in the award of the contract to Craig. That he was not the lowest bidder is admitted.

The power of the board of public works, in the matter of

street improvements, is a specially delegated authority, and their acts are legal only when they are strictly in conformity with its directions. *State, Terhune, pros.,* v. *Passaic,* 12 *Vroom* 90.

And respecting the mode in which contracts by corporations should be made, where the mode of contracting is specially and plainly prescribed and limited, that mode is exclusive and must be pursued. 1 *Dill. Mun. Corp.* (4th ed.), *p.* 520, § 449 (373), and cases cited.

Therefore, if the charter of the city of Trenton provided that contracts of this class, after proper proceedings and due advertisement for proposals, should be awarded to the lowest bidder, the action of the governing board in this matter of awarding the contract to a higher bidder would be set aside as an unauthorized exercise of power.

But it is equally true that, unless this mode of entering into this class of contracts be prescribed and limited, valid contracts may be made, within the scope of the general corporative powers, without awarding them to the lowest bidders. The mode of contracting, then, becomes one of good faith, in the exercise of honest discretion and good judgment, for the best advantage of the public. If the determination as to the mode of contract is a *bona fide* determination and exercised in a reasonable manner and with reasonable discretion, it becomes a lawful exercise of corporate power.

Now, by section 107 of the city charter of Trenton, there is a direction that contracts of the character in question in this case shall be awarded to the lowest bidder, but to that lowest bidder "who shall give satisfactory proof of his or their ability to furnish the requisite materials and perform the work properly," and, therefore, this determination of who is the lowest bidder with these essential qualifications rests in the exercise of a *bona fide* judgment of the authorities who are to award the contract.

This determination is not only grant of power, but it is also a duty imposed upon them to exercise it presumably for the public good, and without the exercise of the power and

the performance of this duty, the contract which is the result may be said not to be the contract required by the law. They undoubtedly have no right arbitrarily, or without sufficient grounds to make a discrimination, but they are entitled to investigate, and, from facts and circumstances before them, they may determine who is entitled to the contract.

In Pennsylvania, where a statute directed that the contract should be awarded to the "*lowest responsible bidder*," it was held that the statute imposed duties upon the city authorities which are not simply ministerial, but discretionary and deliberative, and courts will not, therefore, interfere to restrain these authorities from awarding a contract to one who is not the lowest bidder, even though their action has been indiscreet, unless it be shown that they have acted corruptly and in bad faith. *Findley* v. *City of Pittsburg,* 82 *Pa. St.* 351.

Under a similar statute in the State of New York, while the court denied that there was any conclusive presumption in favor of the adjudication of the common council that the bid was of the lowest responsible bidder, because, if that was so, then the provisions of the city charter would be of little use, and they could always be effectually disregarded and violated, yet the court concluded that: " It is true that the common council, where there are several bidders, have jurisdiction to determine who is the lowest responsible bidder, but, in order to give its action any legal effect, it must exercise its jurisdiction and make a determination based on some facts." There must be some fact tending to show that the bid is not that of a responsible bidder; if that fact exists, then the jurisdiction to determine the lowest bidder, if it be exercised in a *bona fide* manner, is vested in the municipal authority upon whom the power to award the contract is conferred. *People, ex rel. Coughlin,* v. *Gleason,* 121 *N. Y.* 631 ; *Gunning Gravel Co.* v. *New Orleans,* 13 *So. Rep.* 182.

The requirement of duty in this case was that the discretion or judgment of the board of works should be exercised in a reasonable and proper manner, based upon some facts tending to uphold their determination who was the lowest

bidder of the satisfactory ability to furnish the requisite materials and perform the work properly.

There can be no question of the power of the board of public works of the city of Trenton under this section of the charter. It has been directly adjudicated in this court that this provision does not require contracts to be awarded to the person who proposes at the lowest price, but that the proper city authorities—formerly the common council, now the board of public works—have power to determine who is the lowest bidder upon consideration of other circumstances than the mere price proposed. The section in question specifies two qualifications which the lowest bidder must have to be accepted. One qualification is the offer of sufficient security for the faithful performance of the contract in the particulars specified. In this case there is no question as to the offer of sufficient security. But the other qualification is that he shall give satisfactory proof of his ability to furnish the requisite materials and perform the work properly. The board of public works could doubtless determine whether these qualities attached to the bidder. If, acting in good faith, they decide adversely to him, they were not required to award him the contract, although he had proposed the lowest bid or price. *Shaw* v. *Trenton*, 20 *Vroom* 339.

The only question remaining is whether the board of public works acted in good faith and in a *bona fide* manner in arriving at a determination to reject the prosecutor as the lowest bidder possessing the qualification to furnish the requisite materials and perform the work properly.

There is not here in the case the slightest intimation or imputation in the evidence, or in the brief of counsel, of any improper or corrupt motive in awarding this contract. Their determination, of record in their official proceedings, was that the prosecutor did not possess the qualifications required in this respect, and not only is this shown as a conclusion, but the reason, of record, is given, that "he has failed to properly perform similar work on a prior contract, and continues to neglect to perform said work."

Undoubtedly the facts surrounding the performance by the prosecutor of the prior contract awarded him was before the board, and from the evidence in the case I conclude that all the members of the board were personally cognizant of the circumstances. There are facts in this evidence which tend strongly to show a defect in the materials supplied for the former work, which resulted in delay and detriment to the city. Some of these facts are admitted, others are disputed. One fact is that after the work was declared completed by him he acknowledged its defective condition, and was at considerable pains to repair its defect, and it was, although paid for, finally left in a very unsatisfactory condition to the public authorities. These were the facts contended for, and in dispute, and for the determination of the board, and it can be remarked that they were pertinent to the inquiry whether the prosecutor possessed the qualifications in question, as the lowest bidder, as to require the contract to be awarded to him, and clearly under the charter the determination belonged to the board, and that determination could not be reversed by this court if it was based upon any facts tending to uphold their determination. In such case the action of the board will not be reversed on the facts if there is any evidence upon which their finding was based.

In this matter there were facts which would uphold their determination. *Tewksbury* v. *Branchburg,* 15 *Vroom* 595; *Coughlin* v. *Gleason,* 121 *N. Y.* 631.

The evidence or facts may be disputed or conflicting, but that would not be sufficient for a reversal. This dispute or conflict was for the board to determine, and the court would not interfere unless this award of the contract was an unreasonable one, or that clear injustice would result. *Jeliff* v. *Newark,* 19 *Vroom* 101; *Hegeman* v. *Passaic,* 22 *Id.* 109; *Raymond* v. *Rutherford,* 26 *Id.* 441.

If there was a dispute upon the evidence, upon the question left to the determination of the board, it would not be within the province of this court upon *certiorari* to try that question over again and determine such disputed question of facts, and

to consider its weight or sufficiency so as to review the determination of the board, especially where there is any evidence to support it.   *Craft* v. *Smith*, 6 *Vroom* 302 ; *Jeffrey* v. *Owen*, 12 *Id.* 260 ; *Overseer of Madison* v. *Overseer of Monroe*, 13 *Id.* 493 ; *Britton* v. *McDonald*, 14 *Id.* 591 ; *Lush* v. *Foster*, 15 *Id.* 378 ; *Sloan* v. *Wills, Id.* 584 ; *Roehers* v. *Remhoff,* 26 *Vroom* 475.

If there was evidence or facts before the board, whether weak or strong, which formed a rational basis for the determination, it cannot be reversed.   *Dodd* v. *Camden*, 27 *Vroom* 258.

The court on *certiorari* will not weigh the evidence.  It is sufficient if there is a legal and substantial basis for the determination on which the board acted within their authority. *Ayers* v. *Newark*, 20 *Vroom* 170.

The proceedings of the board of public works in this matter, and their determination and the award of the contract to Craig, must be affirmed, with costs.