JAMES OAKLEY AND THE ELECTRIC LIGHT COMPANY OF ATLANTIC CITY, PROSECUTORS, v. THE CITY OF ATLANTIC CITY AND JOHN H. ROTHERMEL, DEFENDANTS.

Submitted December 5, 1898—Decided February 27, 1899.

1. A resolution of a city council, adopted by the requisite vote at the proper meeting, after the reception and entering of the veto of the mayor of the city of an ordinance passed by such council, declaring that such ordinance stand, the objections of the mayor to the contrary notwithstanding, is a sufficient reconsideration and re-adoption of such ordinance, and renders it effective under section 107 of the act of the legislature entitled "An act concerning cities." *Gen. Stat.*, p. 2143. *Lake* v. *Ocean City*, 33 *Vroom* 160, followed.

2. The act of May 22d, 1894 (*Gen. Stat.*, p. 2174), entitled "An act authorizing the lighting of public streets and places in the cities, towns, townships, boroughs and villages of this state, and to erect and maintain proper appliances," section 242, authorizes a contract for the purposes named in the act for any term not exceeding five years to be made with or without advertisement for proposals. The contract need not be awarded to the lowest bidder, and even after advertisement and

the reception of proposals it may be awarded or made independently of such proposals, so long as the power to make such contract is exercised in a *bona fide* manner with reasonable discretion and judgment for the benefit of the municipality.

3. Under this act of the legislature the city has the power and authority, when making such contract for such lighting, to erect and maintain all necessary and proper posts, poles, lanterns and fixtures on the streets and public places at its own expense independently of the contract, or to provide in said contract for the erection and maintenance of the same at the expense of the contractor. It has also the power and authority by contract to provide for the erection and maintenance of such posts, poles, lanterns and fixtures.

4. Where a city has theretofore caused pos s, poles and other fixtures to be erected on certain streets and public places the mere fact that the advertisement for proposals for a contract for lighting the streets of the city fails to state or prescribe that the successful bidder can have the use of these appliances located upon the streets and public places will not vitiate a contract awarded to the successful bidder by which the use of such appliances is allowed to him.

5. The ordinance or resolution required by the act of the legislature may either precede or follow the formal actual execution of the contract awarded for such lighting.

6. In the absence of fraud or palpable abuse of discretion on the part of municipal authorities in the exercise of powers granted by the legislature, the only question for judicial cognizance is whether there has been any violation of legal principles or a neglect of prescribed formalities in entering into the engagement which is the subject of the controversy.

On *certiorari.*

Before Justices DEPUE, VAN SYCKEL and LIPPINCOTT.

For the prosecutors, *David J. Pancoast* and *Clarence L. Cole.*

For the defendants, *Thomas E. French* and *Lindley M. Garrison.*

The opinion of the court was delivered by

LIPPINCOTT, J.    The *certiorari* in this case is to review the legality of an ordinance of the city council of Atlantic City awarding a contract to John H. Rothermel for the

lighting by electricity of the city, and also the contract for such lighting.

The ordinance was adopted by the city council and the contract awarded after advertisement for proposals, and the reception of the same from the several bidders, among which was the proposal of Rothermel, to whom the contract was awarded and in favor of whom the ordinance was adopted, he being the lowest bidder for such lighting.

At the meeting of March 29th, 1898, sealed proposals were advertised for to light the city with electric arc lights for one, three or five years, to be presented on April 11th, 1898. At the latter meeting the bids were received and referred to the lighting committee. At a meeting of April 18th, 1898, the report of the lighting committee on the bids was received, with a recommendation that the contract be awarded to Rothermel for five years. At the same meeting, after discussion, a resolution was adopted awarding the contract to Rothermel as the lowest bidder, for the term of five years. On July 18th, 1898, a resolution was passed approving the contract as prepared by the city solicitor and submitted to the council, and directing the mayor and city clerk to execute the contract with Rothermel. Under the provisions of the charter of the city, at this meeting an ordinance was adopted for the purpose of carrying out the provisions of the contract so awarded. At the meeting of the city council of August 29th, 1898, a veto of the ordinance by the mayor was received. After the veto of the mayor was received, and after a lengthy discussion, a motion or resolution was adopted that the communication of the mayor containing the objections to the ordinance be received and recorded in the minutes of the city council, " and the ordinance stand, the mayor's objection to the contrary notwithstanding." This motion was adopted by a unanimous vote, and the ordinance declared to be passed over the veto.

A preliminary motion was made in this court to dismiss this writ on the ground that the prosecutors have not sufficient interest to attack the ordinance and contract.

The prosecutors are of sufficient interest to prosecute the writ. One is an unsuccessful bidder for the contract, the other is a taxpayer and resident of Atlantic City; the motion to dismiss is therefore denied.

The case is therefore to be determined on its merits.

The first reason alleged is against the validity of the action of the council, overriding the veto of the mayor of the ordinance, and it is that such action was not in compliance with the act entitled "An act concerning cities" (*Pamph. L.* 1886, *p.* 361), in that the council did not proceed to reconsider the said ordinance after the receipt of the mayor's veto, and did not pass the same over such veto as required by such act. *Gen. Stat., p.* 2143, § 107.

This section of the statute, after providing for the veto by the mayor of the action of the council, of any ordinance, resolution or action thereof, proceeds as follows, to wit: "If he approve it he shall sign it, and if not he shall return it with his objections, and file the same with the clerk within ten days after he received it, and the aldermen or common council shall at their regular meeting thereafter order the objection to be entered at large on the journal, after which they shall proceed to reconsider the same, and if two-thirds of all the aldermen or common council elected shall then pass the same, it shall take effect as a law; but in every such case the votes shall be taken by ayes and nays and entered upon the journal."

No objection is made that the meeting was not the proper meeting to consider the matter, or that the resolution overriding the veto did not receive a two-thirds vote of all the members. The sole objection is one of the meaning of the word "reconsider" in the statute, and is that council did not declare in the resolution that they had proceeded to reconsider the matter.

The matter had been considered by the adoption of the ordinance; the veto had been received, and the mayor's objections ordered entered. It then took up the matter and discussed it, and then by the requisite vote resolved that the ordinance stand, the mayor's "objections to the contrary not-

withstanding." This was a reconsideration of the matter, and the only resolution or motion necessary was that the ordinance pass or stand, notwithstanding the objections of the mayor. This, I think, is the usage customary in all legislative bodies acting under similar statutory provisions. The resolution or motion need not in terms declare that the body proceed to reconsider the measure. It need only to be taken up and considered again after the veto has been received.

Besides, it has been held in this court that this term "reconsider" in a statute of this character is not given the artificial meaning which it may have acquired in strict parliamentary proceedings, but only the ordinary meaning, which is to think or consider the matter over again for the purpose of passing upon the matter on such second consideration. *Lake* v. *Ocean City,* 33 *Vroom* 160.

No other objections are presented to the form of the procedure of the council by which the advertisement for bids was made, the proposals received, the contract awarded and the ordinance adopted.

Some of the other reasons may be considered as objecting to the authority of the city to contract for such lighting for a term of five years.

The act of May 22d, 1894 (*Pamph. L., p.* 477 ; *Gen. Stat., p.* 2174, § 242), expressly authorizes a contract for this purpose extending over this period of time. The contract may be made without previous advertisement and reception of proposals. It need not be awarded to the lowest bidder, and it may be awarded, even after advertisement be had and proposals received, to the higher bidder, if such course be deemed the most advantageous to the city, in the absence of fraud, and in the exercise of reasonable judgment on the part of the municipal authority in whom the power is reposed. There is no statutory restriction of this character upon the exercise of the power, and, in the absence of it, the power can be exercised in a *bona fide* manner and with reasonable discretion and judgment for the benefit of the municipality. *Schefbauer* v. *Kearney,* 28 *Vroom* 588 ; *Howell* v. *Millville,* 31 *Id.*

95. See, also, *Foster* v. *Cape May, Id.* 78, and *Conger* v. *Summit Township,* 23 *Id.* 483.

There are other reasons necessary to consider attacking the validity of the proceedings of the city council; that at the time of the introduction and passage of the ordinance under review no contract had been entered into, because the contract and ordinance obliged the city to erect and maintain the necessary posts, poles, wires and lamps to enable Rothermel to perform his part of the contract; and because it was held out to those proposing that they would be obliged to construct and maintain such posts, poles, wires and lamps at their own expense; and that the city is without authority in law to erect such posts, poles, wires and lamps, &c., and that such provision was inserted in the contract and ordinance in order to relieve Rothermel from his obligation to secure the consent of the property-owners before placing poles in front of their property.

It is clear that advertisement was made, proposals received and considered, that a contract was awarded to Rothermel, that the contract was submitted to the council and approved, and that an ordinance was adopted embodying the terms of the contract and enforcing its provisions. And there is not nor can there be any objection to this form of procedure, as being contrary to the statute of 1894, or the charter of the city or the laws governing it. This proposition is conceded and neither the return to the writ nor the evidence in the cause shows to the contrary. The facts as they appear are that the mayor refused to sign the contract, but did not disapprove the formal award of the contract; he did veto the effective act of the adoption of the ordinance which contained the exact provisions of the contract, and which was necessary, *under the charter*, to adopt in order to make it binding upon the city. So far as Rothermel was concerned, the necessity of the execution of a formal contract on his part, was only to exhibit his consent to its provisions as embodied in the ordinance. The formal contract was not necessary before the passage of the ordinance; that could have been executed as well, if not to greater advantage, after the passage of the ordinance. The

ordinance which embodied in itself all the terms and proceedings of the council in awarding the contract and its provisions, terms and agreements, was vetoed by the mayor and passed notwithstanding. Therefore, the mere refusal of the mayor to sign the formal contract before the passage of the ordinance, can avail nothing upon the consideration of whether the proceedings of the council were valid, or whether a contract existed. It can be assumed as appears, that a contract as recited in the ordinance had been entered into between the city and Rothermel.

Under the statute of 1894, to which reference has been made, whilst it may not be within the power of the city to erect and maintain an electric lighting plant, yet express power is given, for the purpose of electric lighting, " to erect, maintain, or cause to be erected and maintained, all necessary and proper posts, poles, lanterns and fixtures on any or all of the public roads, streets, lanes or alleys. This has also been expressly decided in *Howell* v. *Millville*, 31 *Vroom* 95.

The statute and the decision in Howell *v.* Millville also answer the objection made that there was imposed upon Rothermel the legal obligation to secure the consent of property-owners before placing poles on or in front of their property in the streets. By the statute the authority of the city is given to erect such poles for the purposes of lighting, as an exercise of their municipal authority in the regulation and use of the streets. It was not necessary to the validity of the proceedings of the council, the awarding of the contract or the passage of the ordinance, to obtain the consent of the property-owners in front of whose property in the streets the poles might be placed. *Marshall* v. *Bayonne*, 30 *Vroom* 101.

Besides, this question cannot be litigated upon this writ. *Mueller* v. *Egg Harbor*, 26 *Vroom* 245; *Conger* v. *Summit Township*, 23 *Id.* 483, 486.

The advertisement for proposals was in due form and duly advertised. No reason has been presented which attacks the validity of such advertisement or the manner in which it was

ordered. Nor is there any reason which attacks the regularity of the proposals received. Their regularity and validity was passed upon in the case of Bowen, prosecutor, *v.* Atlantic City and Rothermel, and affirmed by a rule of this court at the June Term, 1898.

The other objections to the proceedings are directed to the invalidity of the contract and ordinance because they are not in accordance with the advertisement and proposals, and that, therefore, the contract, as contained in the ordinance and as submitted and approved by the council, is not the contract as provided by the resolution of April 18th, 1898, and that it is invalid as against the other bidders under the invitation for proposals and as against the taxpayers and citizens.

The advertisement for proposals for lighting the city with electric arc lights for a term of one, three or five years specifies the number of lights to be furnished, with power in council to increase or diminish same and direct location, provides for payment for such lighting, and also invites proposals for lighting the city with the power of the lights, the period at which they will be required to be lighted, to be furnished at such time as shall be directed in the contract. It also specifies that "the lights along the boardwalk shall be run in conduits or otherwise as the city council may direct. The running of said lights shall be done at the expense of the contractor. All the cost and expense of lighting and keeping said lights burning shall be at the expense of the contractor."

It will be seen that much of the detail of the lighting was reserved to the ordinance and contract.

The ordinance and contract with Rothermel provided: " That for the purpose of the proper carrying out of the contract, Atlantic City, wherever it has not now the necessary and proper posts, poles, lanterns, fixtures and appliances, will cause to be erected and maintained at the expense of John H. Rothermel all necessary and proper posts, poles, lanterns, fixtures and appliances, on any and all of the public roads, streets, lanes or alleys of Atlantic City as may be rendered

necessary by the direction and location of lights by said city. That Atlantic City will do any and all things necessary and proper to be done by it in accordance with the powers lodged in it to light said city, and shall cause to be erected and maintained as aforesaid, the necessary posts, poles, lanterns, fixtures and appliances to receive the current to be furnished to the lamps suspended thereon. That all cost and expense of the lighting and keeping said lights burning and in repair shall be at the expense of John H. Rothermel."

It is further provided: "That wherever Atlantic City now has posts, poles, lanterns, fixtures or appliances, they shall be placed at the disposal of the said Rothermel for the purpose of carrying out the contract; and that lamps along the boardwalk shall be located and suspended upon the fixtures there provided by Atlantic City for that purpose, and that the wires conveying the current to said lamps along the said boardwalk shall be run upon posts or poles located upon the city property lying to the south or ocean side of the said boardwalk."

The point of the objection to these provisions in the contract and ordinance is that by the advertisement for the proposals it was not prescribed that the successful bidder should have the use of these appliances located upon the streets and public places, nor that the city would cause to be erected certain posts and other appliances for the use of the contractor, and if it had been so specified it might have resulted in a lower bid from the Electric Light Company of Atlantic City, one of the prosecutors, and, therefore, is a possible deprivation to it of the contract, and, besides, it might have resulted in a saving of expenditure of public moneys, and thus the contract and ordinance becomes a legal fraud upon the public.

It is shown by the evidence that such appliances as the city has heretofore erected upon the boardwalk and elsewhere, such as posts, poles, lanterns and other appliances, have been heretofore in the use of the prosecutor, who was one of the bidders for this contract, and that they were to be used hereafter by anyone successful in obtaining the contract, seems to

have been well understood, as well understood by one bidder as another, and it is not perceived how this can furnish any reason for the conclusion that any of the bids would have been any different upon this ground.    The permissive use of these appliances any way in nowise increases the cost of lighting to the injury of the taxpayers.    Besides, it is a reasonable construction of the proposals, or rather the advertisement for them, that such use would be allowed or permitted by the city in the exercise of the right reserved by the specifications to direct the location of the lights, and it is not unreasonable in the general control of so important a contract for the public benefit.

In relation to that provision of the contract and ordinance which provides that the city will cause to be erected and maintained certain poles, posts and other appliances in the carrying out of the contract of light, it is expressly stated that such erection and maintenance shall be at the expense of Rothermel.    This provision of the contract and ordinance reasonably imposes upon Rothermel, at his own expense, the duty of erection and maintenance, preserving to the city the right of control over the performance of the contract for the public benefit. Even if it be conceded that the city under the provisions of the contract was obliged actually to erect these appliances, this affords no reason to say that any other bidder was at all prejudiced, so long as it was understood that such expense was to be imposed upon the successful bidder, nor can it be said if it was so understood that the city was actually to erect them, that it would have resulted in a lower bid, so long as the expense was to be borne by the contractor.

It is not perceived how, in any manner, the interests of the taxpaying public were injured, and the gain or profit which would have arisen to an unsuccessful bidder if the contract had been awarded to him cannot be given any weight in the determination of this matter.    The benefit to the public should be the controlling fact.

I think it has been quite clearly established in this court that, under the statute of 1894, even where proposals more

or less general in their character are advertised for and received, the municipality is not bound to award the contract to the lowest bidder or even to award the contract upon such bids. No statute has been cited applicable to Atlantic City which requires such a course, and in the absence of such restriction it cannot be imported into this statute by construction when the power to contract is so absolutely conferred. I can find no violation of any legal principle in awarding a contract if it be done according to other prescribed formalities, in a municipality taking advantage of the information received by such a course of proposals, and in awarding a contract quite independent of them if it be done in the exercise of an honest discretion and judgment, and without the abuse of the discretion vested in the municipal body possessed of authority.

In the absence of fraud or palpable abuse of discretion on the part of the municipal authorities in the exercise of power granted by the legislature, the only question for judicial cognizance is whether there has been any violation of legal principles or neglect of prescribed formalities in entering into the engagement which is the subject of controversy. *Mc-Govern* v. *Trenton,* 28 *Vroom* 580; *Schefbauer* v. *Kearney, Id.* 588; *Van Reipen* v. *Jersey City,* 29 *Id.* 262, 268.

The wisdom of the legislation by which powers are conferred, and the formalities prescribed thereby, by which such powers are to be exercised, are legislative and not judicial questions.

The proceedings, ordinance and contract must stand affirmed and the writ of *certiorari* dismissed, with costs.