J. W. ELLINGSON, Appellant, v. CHERRY LAKE SCHOOL DIS-
    TRICT, a Municipal Corporation, O. E. Eller, Fred Topp, John
    Maizel, G. W. Goddard and L. D. Hart, Respondents.

(212 N. W. 773.)

**Schools and school districts — power of school board to let contract for
    remodeling schoolhouse.**

  1. The board of a common school district has power to contract for the re-

Annotation.— (2) Construction of term "lowest responsible bidder," see 22 R. C.
L. 610.

modeling of an existing schoolhouse so as to provide for the heating of the schoolhouse; for a sufficient water supply, and for necessary toilet facilities, without submitting such propositions to a vote of the electors of the district.

**Contracts — schools and school districts — lowest responsible bidder.**

2. The word "responsible" in the phrase "lowest responsible bidder" in § 1356, which provides that: "No contract except for teacher's salary, professional services, janitors' wages, or school text books involving the expenditures of school funds or money appropriated for any purpose relating to the educational system of this state, or any county, district or school corporation therein, when the amount exceeds one hundred dollars, shall be let until proposals are advertised for a period of ten days, and after such advertisement, only to the lowest responsible bidder, . . . " means something more than mere financial responsibility. It means responsibility as regards the duty to be assumed by the contractor under the particular contract, and includes all the various elements that bear on that question, such as the integrity of the bidder, his skill, ability and capacity to perform the particular work.

**Schools and school districts — school board may determine who is lowest responsible bidder.**

3. The board of directors of a common school district, in considering bids for a contract submitted under this statute, must determine which one of several bidders presenting bids for a contract is the lowest responsible bidder, and such determination can not ordinarily be set aside by a court unless the action of the board is arbitrary, or fraudulent.

Opinion filed January 3, 1927. Rehearing denied March 15, 1927.

Responsible, 34 Cyc. p. 1674 n. 6. Schools and School Districts, 35 Cyc. p. 950 n. 79; p. 956 n. 37. States, 36 Cyc. p. 876 n. 42.

Appeal from the District Court of Eddy County, *Coffey,* J.
Plaintiff appeals from an order vacating a temporary injunction.
Affirmed.
*W. E. Hoopes,* for appellant.
*R. F. Rinker* for respondents.

CHRISTIANSON, J. The plaintiff has appealed from an order vacating a temporary injunction. The action in which the injunction issued was instituted by the plaintiff, as a taxpayer of Cherry Lake school district in Eddy county, to enjoin the school district and the board of directors thereof from carrying out a certain contract entered into with the defendant G. W. Goddard for the repair and improve-

ment of a certain school house within said district.  At the commencement of the action there was issued, upon the application of the plaintiff, an order citing the defendants to show cause why a temporary injunction should not be issued and restraining the defendants, until the further order of the court, from performing any of the acts sought to be enjoined.  Upon the hearing had pursuant to the order to show cause, both parties appeared and submitted proofs.  And, after due consideration, the trial court made an order vacating the temporary injunction contained in the order to show cause and denying plaintiff's application for an injunction during the pendency of the action.  The appeal before us is from such order.

The material facts are substantially as follows:  The defendant Cherry Lake school district is a common school district in Eddy county, North Dakota.  The defendants, Eller, Topp and Maizel, are the directors of such school district; and the defendant Hart is the clerk thereof.  The defendant Goddard is the contractor, with whom the directors of the school district entered into the contract, the performance of which is sought to be enjoined by this action.

In May, 1926, the board of directors of said defendant school district published a notice for bids for certain improvements of school house No. 4 within said district.  The then condition of the school house and the proposed improvements are described as follows in the affidavit of the defendant, Eller:

"That the school house to be remodeled was constructed in 1914, and when built it was built according to plans and specifications approved by the department of public instruction of the state of North Dakota, and by the superintendent of the county board of health with reference to the proper construction, lighting, heating, ventilating, etc.; that since said building was constructed it has been kept in fairly good repair, has been painted on the outside once every three years or thereabouts, so that the building is well preserved and is in good condition, so that it is now well worth the expenditure that the board is contemplating putting thereon for the improvements.

"The said school building, as originally constructed, was first boarded with ship-lap lumber, and afterwards sided, and ceiling used on the inside walls.  The inside ceiling is not in very good repair, and the building is rather cold.

"The outside toilets are also in bad repair and will have to be rebuilt.

"The stove used in said building is completely worn out, and the intention of the school board, according to the plans and specifications, and contract let for the remodeling of said building, provides for a basement under the school house, a furnace, inside toilets, and finishing the inside of the building with some form of plaster board, all of which improvements are needed for the welfare of the children attending the school.

"Further, there is no well at the school house, so that water is not available, and the water has to be carried for the use of the school for a distance of about a mile. There are no surface wells near the school, so that it is impossible to provide a well without having a drilled well, which would be too great an expense. The improvements contemplated provide for a cistern in the basement with a filter so as to provide water for the school. . . .

. "Affiant further states that the school building to be improved would cost at least two thousand dollars to build, and that its present value with deterioration from the time it was built in 1914 would be at least twelve hundred dollars. That sheet No. 4 of the plans shows the elevation of the old building and also the addition that is to be built thereon for an entry and the toilet and an entrance to the basement."

Two bids were filed for the proposed improvement. The same being the bid of the defendant Goddard in the sum of $1,890 and the bid of one Walbridge in the sum of $1,745. These bids included the furnishing of the necessary labor and material for the proposed improvements in accordance with the plans and specifications, with the exception of the heating plant and toilet system. In the affidavit of the plaintiff, Ellingson, it is stated that the building sought to be repaired and improved. "is not worth to exceed $200;" and that "the proposed new building is to be a modern school building with heating plant, toilet and cesspool, cistern, etc., and that the heating and toilet system is to be installed under another and further contract and was not included in the proposed contract for which the bids hereinbefore mentioned were submitted, and including all this proposed building will cost approximately $2,500."

In the affidavit of the defendant Eller it is said: "The school board

has on hand the sum of between four and five thousand dollars so that they have ample funds on hand to make the improvements contemplated, and for which the contract has been let; the contract has not yet been let for the heating, but the whole amount to be expended on said building will not exceed two thousand five hundred dollars ($2,500)."

The school board accepted the bid of the defendant Goddard and a written contract was entered into between the school board and Goddard. In the affidavit of the defendant members of the school board it is said: "The board in letting said contract, let the same to said G. W. Goddard as the lowest responsible bidder, although, as stated in the complaint, and plaintiff's affidavit, there was a bid by one Fred Walbridge for one hundred forty-five dollars ($145) less than the bid of said G. W. Goddard.; that the said board, after considering said matter and considering the abilities of the said parties to perform the contract, their experience, and all matters concerned with the making of said improvements, and the fact that said school board lived considerable distance from the school house, and that it would be impossible for any of them to supervise any of the work, that they awarded said contract to said G. W. Goddard as the lowest responsible bidder, and that said action was taken by said board in good faith and without any intent of showing favoritism or partiality to anyone."

Plaintiff predicates his demand for injunctive relief in this action solely on the grounds: (1) That the directors of the school district had no authority to contract for the improvements in question unless and until they were first authorized to do so by a vote of the electors of the district; and (2) that in any event it was obligatory upon the directors to let the contract to the lowest responsible bidder and that the contract involved in this case was not so let. These propositions will be considered in the order stated.

(1) In support of his first contention appellant cites §§ 1173, 1175 and 1184, which read as follows:

"Section 1173. The district school board shall have the general charge, direction and management of the schools of the district, and the care, custody and control of all the property belonging to it, subject to the provisions of this chapter. . . . .

"Section 1175. It shall make all necessary repairs to school houses,

outbuildings and appurtenances, and shall furnish fuel and all necessary supplies for the schools and provide for janitor service."

"Section 1184. Whenever in the judgment of the board it is desirable or necessary to the welfare of the schools in the district, or to provide for the children therein proper school privileges or whenever petitioned to do so by one-third of the voters of the district, the board shall call an election of the voters in the district at some convenient time and place fixed by the board, to vote upon the question of the selection, purchase, exchange or sale of a school house site, of the erection, removal or sale of a school house. . . ."

Appellant contends that these statutory provisions merely authorize the school board to mend defects in school buildings which have been occasioned by partial destruction, or wear and tear; and confer no authority upon the school board to remodel or add to existing schoolhouses or outbuildings. And it is contended that the contract in this case provides for remodeling and alteration and that the school board have no authority to enter into such a contract unless they are authorized to do so by a vote of the electors of the district.

After careful consideration of the contentions thus advanced, we have reached the conclusion that they cannot be sustained. According to Funk & Wagnall's New Standard Dictionary "repair" means: "To mend, add to, or make over; as to *repair* a building." While the above quoted sections make no specific mention of "remodeling" or "improvement," other statutory provisions seem to recognize the existence of power in a school board to undertake the remodeling or improvement of school buildings. Thus § 1186, Comp. Laws 1913 provides: "Whenever the county superintendent of schools shall report to the county board of health that a school house or any school outbuilding is in an unsanitary or unsafe condition, . . . it shall be the duty of the said board to investigate the report without delay and to direct the school board . . . to take such action as shall seem to be for the best interests of the persons immediately concerned." The school board is given "general charge, direction and management of the schools of the district," and the "care, custody and control of all the property belonging to it." Section 1173, supra. And it is made the specific duty of the school board "to make all necessary repairs to school houses,

outbuildings and appurtenances" and to "furnish fuel and all necessary supplies for the schools." Section 1175, supra.

Section 1184, supra, however, places upon the power of the school board the limitations that the board may not purchase, exchange, or sell a school house site, or erect, remove, or sell a school house unless that question is first submitted to the electors of the district. But it will be noted that neither § 1175, supra, relating to the repair of school houses, outbuildings and appurtenances, nor § 1184, relating to the erection of school houses, make any provision, in terms, for the alteration or improvement of existing school houses. There is no requirement that there be submitted to the electors of a school district such questions as whether an existing school house shall be remodeled or improved; whether playground apparatus shall be installed, or a well constructed on the school grounds, or any one of the numerous similar questions that are likely to arise from time to time in the ordinary operation of the schools. We think the legislative intent, as manifested by the various statutory provisions considered together, is to confer upon a school board the power to arrange for such incidental alterations and improvements in school buildings and appurtenances as in the course of time may become necessary or desirable in the proper operation of the schools of a district. The legislature has certainly manifested no intention that the electors shall be required to take the time and go to the expense of personally determining these administrative questions. In the instant case the school board had unquestioned power to restore the outhouses and to purchase a new stove. There can likewise be no question but that they had authority to arrange for a necessary water supply. After due consideration the school board decided that a better way to furnish these facilities was to construct a small addition to the school house and to construct a basement, thereby making it possible to install a furnace in place of the stove and inside toilets in place of the former outside ones. The board further decided that, in order to provide the necessary supply of water, it would be desirable to construct a cistern and a filter. In our opinion the school board, in contracting for these improvements without submitting the question to a vote of the electors of the district, did not exceed the powers conferred upon them by the statute.

(2) Appellant invokes § 1356, Comp. Laws 1913, which provides:
"No contract except for teacher's salary, professional services,. janitors' wages, or school text books involving the expenditure of school funds or money appropriated for any purpose relating to the educational system of this state, or any county, district or school corporation therein, when the amount exceeds one hundred dollars, shall be let until proposals are advertised for a period of ten days, and after such advertisement, only to the lowest responsible bidder. Any violations of this section shall be a misdemeanor."

Appellant contends that, inasmuch as the contract involved in this case was not let to the lowest bidder, it is violative of this section. The argument advanced by the appellant ignores a material part of the statute. The mandate of the statute is not (as appellant assumes) that the contract shall be let to the "lowest bidder;" the mandate is that the contract shall be let to the "lowest *responsible* bidder." If the legislature had intended that the contract should in every case be let to the lowest bidder, it would doubtless have said so. What the legislature did say was that the school board should let the contract to the "lowest *responsible* bidder."

The very terms of the statute imply that a school board or other governing body shall determine the responsibility of the several bidders and award the contract to the one found to be the lowest responsible bidder. The term "responsible," as used in the statute, means something more than mere financial responsibility. It means responsibility as regards the duty to be assumed by the contractor by the particular contract under consideration and includes all the various elements that bear on that question, such as the integrity of the bidder and his skill,. ability and capacity to perform that particular work. 36 Cyc. 875, 876; Williams v. Topeka, 85 Kan. 857, 38 L.R.A.(N.S.) 672, 118 Pac. 864, Ann. Cas. 1913A, 497. There is no claim on the part of the plaintiff in this case that the school board acted fraudulently or collusively in awarding the contract to Goddard, or that its judgment in so doing was influenced by any improper motives. Nor does there seem to be any claim, and on the record presented on this appeal there is no basis for a claim, that the action of the school board was arbitrary. On the contrary, the record before us shows that the school board acted in good faith and awarded the contract to the defendant Goddard for

reasons which in their judgment established that he was the lowest responsible bidder.

It follows that the order appealed from must be affirmed. It is so ordered.

BIRDZELL, Ch. J., and NUESSLE and BURKE, JJ., and JANSONIUS, District J., concur.

BURR, J., did not participate; Honorable FRED JANSONIUS, Judge of the Fourth Judicial District, sitting in his stead.