D. F. WILLIAMS, *Appellant*, v. THE CITY OF TOPEKA
*et al., Appellees.*

No. 17,753.

SYLLABUS BY THE COURT.

1. PUBLIC IMPROVEMENTS—*Lowest "Responsible" Bidder.* The word "responsible" in the phrase "lowest responsible bidder" in a statute providing for competitive bids before awarding contracts for certain public improvements in cities of the first class, implies skill, judgment and integrity necessary to a faithful performance of the contract, as well as sufficient financial resources and ability.

2. —————— *Decision of Governing Body Final.* The governing body of the city must determine the fact whether one who presents a bid for a contract under the statute above referred to is the lowest responsible bidder, and such determination can not be set aside by a court unless the action of such tribunal is arbitrary, oppressive or fraudulent.

3. —————— *Finding of District Court Approved.* The finding of the district court that the mayor and commissioners of the city of Topeka acted upon sufficient information and in ·good faith in awarding the contract in question is, upon an examination of the evidence and findings, approved.

Appeal from Shawnee district court. Opinion filed November 11, 1911. Affirmed.

STATEMENT.

THIS is an action by a property owner to enjoin the mayor and commissioners ·of the city of Topeka from entering into a contract for paving. The court made very full findings, from which the following material facts are deduced: Topeka is a city of the first class, governed by a mayor and four commissioners under the commission form of city government. Petitions were duly presented for the pavement of certain streets with asphaltic concrete, and resolutions were passed and published for such pavement. Proper specifications were prepared and filed for the work, to be done under the direction of the city engineer and to his satisfaction.

Bids were received for the work as provided by law, only two of which were within the engineer's estimate; those exceeding the estimate were rejected for that reason. The bids considered were, that of the Kaw Paving Company, a domestic corporation, for $54,-770.30, and that of the Cleveland Trinidad Paving Company, $52,326.95. When the bids were opened their further consideration was postponed for a week. The Cleveland company was not known to the mayor and commissioners, and one of the commissioners wrote a letter of inquiry to a commissioner of Wichita for information and received a letter in response criticizing that company in relation to the cash guarantee it had given but saying there was no particular complaint of the pavement which it put down in that city. A telephone talk with a former mayor of Wichita elicited the same information. The commissioner of streets inquired of a state senator residing at Wellington concerning the Cleveland company and was informed that when a contract for paving was about to be let in that city he had investigated the company and found that it had done some good work, but that some if it was rotten. Another commissioner inquired of the same person and was referred to the Ohio State Journal, at Columbus, Ohio, for information. Inquiry was then made of that publication, and in response a reply was received saying that the Cleveland company had been exposed in February, 1907, in that city in connection with illegal practices in obtaining a contract for paving, giving the particulars of alleged corrupt dealings. A telegram conveying this information was shown to the attorney of the Cleveland company and was discussed by him and the commissioners informally.

At a meeting subsequently held the president of the Cleveland company and its attorney appeared before the commissioners, and the mayor announced that the bids for paving would be taken up and an opportunity given to any person who desired to be heard; thereupon

the representatives of the company explained that the trouble in Columbus arose out of the corrupt demands by city officials upon employees of the company in charge of the work; that although that company was the lowest bidder a contract would not be awarded to it unless money was paid; that money was accordingly paid pursuant to such demand; that city officials were tried, found guilty, and sentenced to the penitentiary; that employees of the company in charge of the work were fined; that the president, who had sufficient knowledge of what had been done to make him criminally liable had pleaded guilty to the charge of bribery and paid a fine imposed therefor, and that the person in charge of the work who was responsible for the corrupt deal had not since been in the employ of the company. The president assured the commission that since that time his company and its officers had been doing a strictly honest business, and there had been no ground or complaint of crookedness or bad work. The attorney also read telegrams from cities in Ohio, Missouri, Oklahoma and Kansas, stating that the Cleveland company had done paving work in the respective cities which was satisfactory. Other cities were named where the company had put down pavements; further investigation was requested, and the statement was made that if the work in any of the cities named was not found to be satisfactory, the bid would be withdrawn. The commission was also informed that the Cleveland company was financially responsible, having assets of over a half million dollars.

The mayor and commissioners made no further investigation but awarded the contract to the Kaw Paving Company upon its bid.

The court further found that the contract to the Kaw Paving Company was awarded in good faith by the mayor and commissioners upon consideration of the evidence presented and information before them, who found that it was the lowest responsible bidder; and

that no question was raised as to the financial responsibility of either company. The court concluded as matter of law that the duty to determine who is the lowest responsible bidder, vested in the mayor and commissioners in awarding such contracts, partakes of a judicial character requiring the exercise of discretion, and that they acted within the jurisdiction conferred by law, and upon facts which justified their finding. The injunction was refused and the plaintiff appealed.

Evidence was produced on the trial tending to prove that the Cleveland company had performed large contracts for paving in many cities to the satisfaction of their governing bodies, although it appeared that a criminal prosecution had been begun against its president in one of the cities, and that an action for an injunction was being prosecuted in another. Explanations were given of these proceedings tending to exculpation. Evidence of the good reputation of the company and its president was also produced.

*T. F. Garver, R. D. Garver,* and *D. C. Westenhaver,* for the appellant.

*W. C. Ralston,* city attorney, *Leonard S. Ferry, Thomas F. Doran,* and *John S. Dean,* for the appellees.

The opinion of the court was delivered by

BENSON, J.: Two questions are presented: (1) What authority is vested in the mayor and commissioners concerning paving contracts? and (2) Was this authority so exercised as to warrant the interposition of a court of equity to prevent the performance of the contract by the Kaw Paving Company?

The statute relating to this subject, after specifying the preliminary steps to be taken, provides that:

"The mayor and council shall let the work by contract to the lowest responsible bidder, if there be any such whose bid does not exceed the estimate. If no responsible person shall propose to enter into the con-

tract at a price not exceeding the estimated cost, all bids shall be rejected and the same proceeding as before repeated, until some responsible person by sealed proposal shall offer to contract for the work at a price not exceeding the estimated cost." (Laws 1909, ch. 68, § 1, Gen. Stat. 1909, § 1017.)

The purpose of this provision is to insure competition in letting contracts for such improvements, to protect the taxpayers and the public. (*Surety Co. v. Brick Co.*, 73 Kan. 196, 84 Pac. 1034.) A contract made in violation of its requirements would be illegal (2 Dillon, Munic. Corp., 5th ed., §§ 801, 811; 20 A. & E. Encycl. of L. 1165), and such requirements are generally held to be mandatory (28 Cyc. 1031; *Inge et al. v. Board of Public Works of Mobile*, 135 Ala. 187, 33 South. 678, 93 Am. St. Rep. 20; *McBrian v. Grand Rapids*, 56 Mich. 95, 22 N. W. 206; *McGovern v. Board of Public Works*, 57 N. J. Law, 580, 31 Atl. 613; *People ex rel. Coughlin v. Gleason*, 121 N. Y. 631, 125 N. E. 4; *Chippewa Bridge Co. v. Durand*, 122 Wis. 85, 99 N. W. 603, 106 Am. St. Rep. 931). The vital question, however, arises upon the meaning of the expression "the lowest responsible bidder." The appellant contends that because the company was financially responsible, the specifications certain and definite as to the work and details, supervision reserved to the city, and a good bond required, the Cleveland company must be regarded as a responsible bidder, that is to say, able to respond to or to answer in accordance to what is demanded, and that pecuniary responsibility only is to be considered. On the other hand it is insisted that a much wider meaning should be given to the word "responsible," and that as used in this statute it includes skill, judgment and integrity. This view is amply sustained by the authorities. Judge Dillon says:

"In determining who is the lowest responsible bidder, or the lowest and best bidder, the duty of the board or officer is not merely ministerial, but *partakes of a*

*judicial character* requiring the exercise of discretion and judgment. Consideration must be given not only to the pecuniary ability of the bidders to perform the contract, but also to the skill, ability, and integrity necessary to do faithful, conscientious work, and to fulfill the terms of the contract." (2. Dillon, Munic. Corp., 5th ed., § 811.)

In section 268 of volume 1 of Abbott on Municipal Corporations it is said:

"As stated repeatedly in cases passing upon this point, the duty imposed to award a contract to the lowest responsible bidder involves a determination of other questions than financial; the business judgment and capacity, skill, responsibility and reputation of the various bidders and the quality of the materials proposed to be supplied are all to be taken into consideration."

And in section 636 of volume 1 of the third edition of Elliott on Roads and Streets, the rule is stated thus:

"In determining who is the best or lowest responsible bidder, the skill, ability and integrity of the bidders may be taken into consideration as well as the amounts of their bids and their pecuniary ability."

Citations of adjudicated cases are given by these authors under the sections quoted and it is not necessary to repeat them here. Not only is this rule supported by a multitude of precedents, but it rests in reason. The public interests are much better promoted by faithful performance than by repairs upon, or indemnity for, defective public work. In the nature of things such a remedy will often be inadequate, vexatious and expensive. Prevention is vastly better than cure, at least the cure to be wrought through litigation. As stated in the opinion in *Commonwealth v. Mitchell,* 82 Pa. St. 343:

"A dishonest contractor may impose work upon the the city, in spite of the utmost caution of the superintending engineer, apparently good, and even capable of bearing its duty for a time, which in the end may

prove to be a total failure and worse than useless. Granted, that from such a contractor pecuniary damages may be recovered by an action at law; this is, at best but a last resort, that often produces more vexation than profit—a mere patch upon a bad job; an exceedingly meager compensation, at best, for the delay and incalculable damage resulting to a great city from the want of a competent supply of water. The city requires honest work, not lawsuits." (p. 349.)

While the contract in that case related to waterworks the principle applies to street improvements, although the defects might not be so disastrous. We conclude that the word "responsible" in the phrase "lowest responsible bidder" was used by the legislature in the sense in which it had long been interpreted by the courts and text-writers, and must be held to imply skill, judgment and integrity necessary to the faithful performance of the contract, as well as sufficient financial resources and ability. (Dillon on Munic. Corp., *supra;* State ex rel. Eaves v. Rickards, 16 Mont. 145, 40 Pac. 210, 50 Am. St. Rep. 476, and note.)

The next inquiry is how this responsibility is to be determined. Here again the authorities speak with practically one voice. The governing body of the city, the mayor and council, or commissioners, as the case may be, must determine the fact, and such determination can not be set aside unless the action of the tribunal is arbitrary, oppressive or fraudulent. (High's Extraordinary Legal Rem. § 92; *The State ex rel. v. McGrath,* 91 Mo. 386, 3 S. W. 846; *Douglass v. Commonwealth,* 108 Pa. St. 559; *Madison v. Harbor Board of Baltimore City et al.,* 76 Md. 395, 25 Atl. 337; *Meffert v. Medical Board,* 66 Kan. 710, 72 Pac. 247; *Dever v. Humphrey,* 68 Kan. 759, 75 Pac. 1037.) The determination of the question who is the lowest responsible bidder does not rest in the exercise of an arbitrary and unlimited discretion, but upon a *bona fide* judgment based upon facts tending to support the determi-

nation. (*McGovern v. Board of Public Works*, 57 N. J. Law, 580, 31 Atl. 613; *Bunker v. Hutchinson*, 74 Kan. 651, 87 Pac. 884; 2 Dillon, Munic. Corp., 5th ed., § 811.) The statute will not be so interpreted as to afford a cover for favoritism. The city authorities are required to act fairly and honestly, upon reasonable information, but when they have so acted their decision can not be overthrown by the court.

. "The duty of examining the proposals, determining the responsibility and awarding the contract is judicial in its nature and character, and the awarding the contract is a judicial act, which is not within the province of the courts to control by *mandamus* or mandatory injunction" (*Johnson v. Sanitary District*, 163 Ill. 285, 287, 45 N. E. 213.)

This subject is treated in notes in 26 L. R. A. 710*h* and 50 Am. St. Rep. 489.

The remaining questions are whether the facts before the mayor and commissioners tended to support their conclusion that the Cleveland company was not the lowest responsible bidder, and whether they acted in good faith in awarding the contract to another. They made such inquiries as their own knowledge suggested and by this means learned of the situation at Wellington and Wichita, and seeking for further information suggested by these inquiries, they learned of the exposures at Columbus, Ohio, directly affecting the integrity of the company and its officers in the same line of business to which its bid related. This information was presented to the attorney of the company who with its president appeared before the mayor and commissioners and read telegrams from many cities where the company had been awarded contracts, and were given such hearing and made such explanation as they desired. The statements made by them substantially confirmed the information already gained concerning the affair at Columbus. The fact that city officers solicited or demanded the bribe only showed which party took

the initiative in that matter. It is argued that four years of honest and faithful work in many places since that occurrence and the good reputation of its president proved the worthiness and reliability of the company at the time of the hearing, and hence no weight should have been given to that unfortunate incident. Without further comment upon the facts, it is sufficient to say that the incident referred to challenged careful attention, and raised the inquiry whether the integrity of the company could be relied upon for conscientious and faithful work. No request was made for postponement or for another hearing, and further investigation could not change the situation as stated by its representatives.

In view of the information so obtained and other information before the commissioners, and the finding of the district court that the award to the Kaw Paving Company was made in good faith, the judgment must be affirmed.