No. 50,009

CASE-BROS. CO., INC., *Plaintiff-Appellee,* v. CITY OF OTTAWA, KANSAS, *Defendant-Appellant.*

(602 P.2d 1316)

Opinion filed December 1, 1979.

*John L. Richeson,* of Anderson, Byrd, and Richeson, of Ottawa, argued the cause and was on the brief for the appellant.

*Larry B. Henderson,* of Henderson and Rees, of Topeka, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by the low bidder on a construction contract to recover damages from the city of Ottawa because the city rejected the plaintiff's low bid. The plaintiff is Case-Bros. Company, Inc., a contractor of Topeka, Kansas.

The facts in the case are not in dispute and essentially are as follows: In the early summer of 1976 the city of Ottawa determined that it should combine its police department with its fire department into a Department of Public Safety. In order to provide office space and other facilities, the fire station was to be remodeled. For this purpose the city retained Skidmore and Devore, Architects. These architects compiled specifications for fire station remodeling and labeled it Project 310. These specifications were published in booklet form, together with an invitation to bid, instructions to bidders, proposal form, and detailed construction specifications. Invitations to bid were initially issued on June 22, 1976, and sealed bids were received on July 6, 1976, in the office of the city clerk. On July 7, 1976, these bids were reviewed and determined to all be higher than an estimate formulated by the architects. The plaintiff did participate by submitting a bid, but it was not the low bidder.

On July 21, 1976, a second invitation to bid was advertised and on August 4, 1976, two bids were received. The bid submitted by plaintiff was the low bid by the sum of $2,206. All bids again exceeded the architect's estimate. The governing body of the city of Ottawa requested and received a written resume of the work experience of the plaintiff. On August 4, 1976, the governing body of the city rejected the low bid of plaintiff and entered into contract with the next-to-low bidder. The bid security of all bidders was returned by the architects on August 5, 1976. The plaintiff was not awarded the contract for the following reasons: (1) The resumes of work experience of plaintiff did not reveal any work undertaken by plaintiff on a public building or project; (2) The plaintiff did not offer any experience of any commercial remodeling; and (3) The date for completion was more than thirty (30) days longer than the bid of the successful bidder.

The determination of this controversy depends upon a construction of the language used in the invitation to bid and instructions to the bidders which were issued by the city manager of Ottawa. The invitation to bid required interested bidders to deliver sealed proposals to the office of the city clerk by July 6, 1976. Drawings and specifications for the work to be performed were available for examination at the architects' office. The last paragraph in the invitation to bid stated as follows:

"The City of Ottawa reserves the right to waive irregularities and to reject *any and all* proposals." (Emphasis supplied.)

The pertinent portions of the instructions to bidders necessary to resolve this controversy are as follows:

"BID SECURITY. Bid Security shall be made payable to the City of Ottawa, Ottawa, Kansas, in the following amount:

"COMBINATION CONSTRUCTION . . . . . $1,000.00 Security shall be either certified check or bid bond issued by surety licensed to conduct business in the State of Kansas. The *successful* bidder's security will be retained until he has signed the Contract and furnished the required payment and performance bonds. The Owner reserves the right to retain the security of the next two lowest bidders until the low bidder enters into Contract or until 30 days after bid opening, whichever is the shorter. All other bid security will be returned as soon as practicable. If any bidder refused to enter into a Contract, the Owner will retain his bid security as liquidated damages, but not as a penalty.

"QUALIFICATIONS OF BIDDERS. If required, a bidder shall submit to the Architects a properly executed Contractor's Qualification Statement, AIA Document A305.

"REJECTION OF BIDS. The bidder acknowledges the right of the Owner to reject *any or all* bids and to waive any informality or irregularity in any bid received. In addition, the bidder recognizes the right of the Owner to reject a bid if the bidder failed to submit the date required by the bidding documents, or if the bid is in any way incomplete or irregular." (*Emphasis supplied.*)

It is undisputed that the plaintiff's bid was in all respects complete and regular as to form and that all requirements to be accepted as a "bona fide bidder" were met by the plaintiff.

The trial court held at the pretrial conference that, under the terms of the invitation to bid and bidding instructions quoted above, the plaintiff, as the lowest reasonable bidder, was entitled to have its bid accepted and that the city was liable for breach of contract. The case was then tried to the court on the issue of damages only. The district court awarded damages to the plaintiff in the amount of $3,000. The city has appealed.

Throughout the proceedings in the district court and on the appeal, the contentions of the parties have been essentially as follows: The plaintiff contended that, since it was the low bidder, the city of Ottawa must accept the bid and enter into a contract. Plaintiff relies upon the language in that paragraph of the instructions to bidders entitled "Bid Security" and argues that the use of the term "low bidder" is synonymous with the term "successful bidder" used in that same paragraph. The city of Ottawa contended that both the invitation to bid and the instructions to bidders provide the city reserves the right to reject any or all bids or proposals. The city further maintained that, if it had not so retained such a right to reject any or all bids, it would have been obligated to enter into a contract with the low bidder when the invitation for bids was initially advertised on June 22, 1976, and the second advertisement of invitation to bid would not have been possible. The city further contended that it is a legally permissible and customary practice in this state for municipalities to reserve the right to reject any and all bids and that such provisions must be given effect.

The primary point raised on the appeal by the city is that the trial court erred in holding that the city did not unequivocally reserve the right to reject any or all bids submitted. Although the city raises other points, a determination of that primary issue will determine the appeal, since we have concluded that the trial court was in error and that the defendant city was entitled to judgment as a matter of law.

At the outset, it must be emphasized that there exists no statutory requirement for any bidding process to be used by a city of the second class, operating under the city management form of government, in entering into a public improvement contract. Under its powers, the city governing body has the discretionary right to enter into a construction contract with whomever it determines to be the most qualified for the work. The issue presented here for determination is one of law and, simply stated, is whether under the invitation to bid, the city had the right to reject the bid of the plaintiff, Case-Bros., even though plaintiff was the low bidder and a responsible contractor. We have concluded that the city did have such a right and that the plaintiff has no cause of action against the city under the circumstances of this case.

In *Yarnold v. City of Lawrence*, 15 Kan. *126 (1875), this court held that, in the absence of an express direction of law to let contracts to the lowest bidder, no letting or competition is necessary. The same issue was before the court again in *Bunker v. Hutchinson*, 74 Kan. 651, 87 Pac. 884 (1906). In the opinion at page 658, the court cites volume 1 of Spelling on Extra Ordinary Relief, section 718, which states:

" 'Where no conditions or restrictions are imposed upon municipal officers in the matter of letting contracts they are not obliged to let the work to the lowest bidder, and cannot be enjoined for a refusal to do so unless guilty of fraud. They may exercise an unlimited discretion so long as they are not guilty of gross abuse of discretion and do not pervert their powers to such an extent as to amount to a fraudulent misappropriation of the public funds.' (See, also, *Schefbauer v. Kearney*, 57 N.J. Law, 588, 31 Atl. 454; *Elliot v. Minneapolis City*, 59 Minn. 111, 60 N.W. 1081; *Riehl v. City of San Jose*, 101 Cal. 442, 35 Pac. 1013; *Kingsley v. City of Brooklyn*, 5 Abb. New Cas. [N.Y.]1; 20 A. & E. Encycl. of L. 1165)."

Where a public agency's invitation to bid specifically gives to the public authority the right to reject any or all bids, the cases in other jurisdictions generally agree that such a provision means exactly what it says and that, where a low bid is rejected, the low bidder is thereby precluded from any right to claim a binding contract. There is an excellent annotation on this subject in 31 A.L.R.2d 469. In the annotation many cases are cited supporting this principle of law. See also 64 Am. Jur. 2d, Public Works and Contracts §§ 75 and 76.

With these general principles in mind, we turn to the specific provisions of the invitation to bid and the instructions to bidders

to determine if there are any provisions contained therein to justify a departure from the general rule. We have concluded that there are not. In our judgment, the invitation to bid is clear and unambiguous. The city of Ottawa without limitation reserved the right to reject "any and all bids" in the invitation to bidders and again in the instructions to bidders. The district court's reliance on the "BID SECURITY" provisions quoted above was not justified. Those provisions did not specify that the low bidder's security would be retained but rather that the *successful* bidder's security would be retained. The district court ignored the fact that it was optional for the city to retain the bid security of the next two lowest bidders. The instructions to bidders do not state that the successful bidder has to be the lowest bidder. We have concluded that the district court erroneously placed a limitation upon the language of the "REJECTION OF BIDS" provision that does not exist. The statement combines two separate thoughts. First, "the bidder acknowledges the right of the owner to reject *any or all* bids," and second, "the bidder acknowledges the right of the owner . . . to waive any informality or irregularity in any bid received." The balance of the language of the instruction does not modify these two thoughts, but simply explains and gives examples of the city's retained rights.

We have thus concluded that the general rule is applicable in this case and that the trial court erred in holding that the city of Ottawa did not unequivocally have the right to reject any and all bids within the discretion of its governing officials. There is no contention in the case that the city officials were guilty of fraud as required in *Bunker v. Hutchinson.*

Here the action was clearly one in contract. Under the invitation to bidders the city had the right to reject the bid of the plaintiff, Case-Bros., even though that was the lowest bid. Hence, the city was entitled to judgment as a matter of law.

Judgment of the district court is reversed and judgment is entered in favor of the defendant.

FROMME, J., not participating.

MILLER, J., concurs in the result.