INTERIOR CONTRACTORS,
INC., Plaintiff,

v.

BOARD OF TRUSTEES OF NEWMAN MEMORIAL COUNTY HOSPITAL, and J.P. Murray Company, Inc. d/b/a Murray Company, Defendants.

No. 01–4186–SAC.

United States District Court,
D. Kansas.

Jan. 29, 2002.

Donald R. Hoffman, Jason P. Hoffman, Hoffman & Hoffman, Topeka, KS, for plaintiff.

Larry M. Schumaker, Shook, Hardy & Bacon, L.L.P., Kansas City, MO, Michael D. Strong, Lewis, Rice & Fingersh, L.C., Kansas City, MO, for defendants.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

The case comes before the court on the motions to dismiss or, in the alternative, motions for summary judgment filed by the defendant J.P. Murray Company, Inc. ("Murray") (Dk.16) and the defendant Board of Trustees of Newman Memorial County Hospital ("Trustees") (Dk.20).[1]

The plaintiff, Interior Contractors, Inc. ("ICI"), filed a consolidated response opposing the motions (Dk.22), and the defendant Murray filed a reply memorandum (Dk.26).

The parties orally argued their motions on January 24, 2002. Having reviewed all matters submitted and researched the relevant law, the court issues the following as its ruling on the motions.

The plaintiff is the disappointed bidder on a project involving the construction of a connector building and kitchen addition at Newman Memorial County Hospital. When the Trustees awarded the contract for this construction work to other bidders, the plaintiff ICI brought this action under the civil rights statute of 42 U.S.C. § 1983 and the declaratory judgment statutes of 28 U.S.C. §§ 2201 and 2202. In its verified complaint, the plaintiff asserts federal jurisdiction exists by reason of a federal question (28 U.S.C. § 1331), diversity of citizenship (28 U.S.C. § 1332), and a civil rights violation (28 U.S.C. § 1343). The complaint, however, does not allege facts to support either federal question or diversity jurisdiction. The civil rights statute appears to be the only possible basis for federal jurisdiction.

## RULE 12(B)(6) STANDARDS

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Dismissal should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), or unless an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993); *see Hospice of Metro Denver, Inc. v. Group Health Ins. of Oklahoma*, 944 F.2d 752, 753 (10th Cir.1991) ("Dismissal of a case pursuant to Fed. R.Civ.P. 12(b)(6) requires the legal determination that the plaintiff can prove no set of facts in support of his claim to entitle him to relief.") (citations omitted). The Tenth Circuit has observed that the federal rules " 'erect a powerful presumption against rejecting pleadings for failure to state a claim.' " *Maez v. Mountain States Tel. and Tel., Inc.*, 54 F.3d 1488, 1496 (10th Cir.1995) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)).

A court judges the sufficiency of the complaint accepting as true all well–pleaded facts, as distinguished from conclusory allegations, *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir.1998),

---

1. The plaintiff originally named three defendants in this suit but recently dismissed without prejudice the defendant Board of County Commissioners of Lyon County, Kansas, (Dk.13).

and drawing all reasonable inferences from those facts in favor of the plaintiff. *Witt v. Roadway Express,* 136 F.3d 1424, 1428 (10th Cir.), *cert. denied,* 525 U.S. 881, 119 S.Ct. 188, 142 L.Ed.2d 154 (1998); *see Southern Disposal, Inc. v. Texas Waste Management,* 161 F.3d 1259, 1262 (10th Cir.1998) (court "need not accept . . . conclusory allegations as true."). It is not the court's function "to weigh potential evidence that the parties might present at trial." *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir.1991). The court construes the allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir.1991). These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated General Contractors v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) (footnote omitted). Dismissal is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice. *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1359 (10th Cir.1989).

A 12(b)(6) motion must be converted to a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court" and "all parties . . . [are] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). Written documents attached to the complaint as exhibits are considered part of the complaint and may therefore be considered in connection with a motion to dismiss under Rule 12(b). *Hall v. Bellmon,* 935 F.2d at 1112 (citing Fed.R.Civ.P. 10(c)). "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d at 1384.

Because those issues that are dispositive here do not require consideration of evidence outside of the documents attached to the complaint or referenced therein, the court follows the standards governing Rule 12(b)(6) without resorting to the standards and procedures governing summary judgment motions. To provide a fuller context of the events leading to this litigation, the court may refer to certain other facts for background purposes only, but they will play no other part in the court's decision on the dispositive issues.

## FACTS

1. The plaintiff ICI is a Kansas corporation with its principal place of business in Topeka, Kansas. The defendant Trustees is an entity created under Chapter 19, Article 46 of K.S.A. and vested with authority to manage and control Newman Memorial County Hospital in Emporia, Kansas. The defendant Murray is a Missouri corporation doing business in the State of Kansas. The Board of County Commissioners of Lyon County, Kansas, ("Commissioners"), is a body politic created under Chapter 19, Article 2.

2. Murray contracted with the Trustees to serve as the construction manager on the Trustee's hospital construction project known as the "Connector Building and Kitchen Renovation."

3. As part of its duties as construction manager, Murray was to solicit bids from subcontractors and suppliers for work it did not customarily perform. The Hospital then was to decide which bid to accept after receiving advice from Murray and the architect. A supplemental condition to the agreement between Murray and the

Trustees provided that the work would "be awarded to the lowest and best bid."

4. Murray advertised an Invitation to Bid the Project on April 9, 2001. The advertisement announced that the sealed bids were due on August 23, 2001, and contained a clause stating that: "The hospital reserves the right to reject any or all bids and to waive any informality or technicality in bidding, if it be in their best interest to do so."

5. Murray issued Bid Instructions in July of 2001 which set forth specifications for twenty-six bid items for work being let under the contract at that time ("Project"). The Instructions also outlined the bid procedure, general conditions, scope of work, and repeated the Hospital's reservation of the right to reject any or all bids. As to the "Form of Proposal," the Instructions specified that a bid proposal must "include all work in accordance with the Bid Instructions" and that a proposal was to "identify separately, costs for all items listed on the proposal form as it pertains to your scope of work." ICI points out that the Instructions nevertheless characterized the contract as being "lump sum." The Instructions further provided that "[e]ach subcontractor shall be responsible for removal of his debris from the site."

6. On September 6, 2001, the plaintiff ICI submitted its bid proposal to the Hospital within the deadline extended by Murray for sealed bid proposals. ICI's bid covered five categories of the Project for the lump sum of $1,640,000. Instead of breaking down the cost for each category of work being bid, ICI's completed bid proposal form referenced for each category the same total cost for performing all five categories being bid.

7. On September 6, 2001, Murray opened the sealed bids and read them aloud to the audience of bidders. On the Bid Items numbered 7.24, 9.2, 9.3 9.5 and 9.6, ICI's lump sum bid was lower than the total of the competitor's lowest bids submitted on those categories.

8. On or about September 10, 2001, Murray notified ICI to "break its bid into sections" or its bid would be "thrown in the trash." ICI complied and provided separate amounts for the five different categories.

9. ICI's bid and all other initial bids came in over budget, and no contract was awarded on the basis of those bids.

10. Working with the architect, Murray and the Hospital undertook some value engineering on parts of the project in an effort to reduce the construction costs and to bring the project within budget. On September 13, 2001, Murray issued a memorandum to all potential bidders that requested revised proposals reflecting the construction changes made in the attached value engineering ideas. The memorandum announced that the bidders' new proposed prices were due on September 20, 2001. ICI received a copy of this memorandum.

11. Revised proposals were received from the bidders, including ICI. From these revised bids, contracts for the project in question were awarded to Firebaugh and WG Samuels with each responsible for different bid items. Murray advised ICI on October 12, 2001, of the contract awards.

12. On October 24, 2001, ICI made demand upon the Trustees and Murray to award it the Project.

13. Firebaugh and WG Samuels entered into subcontracts with Murray in November of 2001 and began their work under those contracts in November, and it continues to this date.

14. The plaintiff filed this lawsuit on December 13, 2001.

**CLAIMS AND RELIEF SOUGHT**

As set forth in its complaint, the plaintiff seeks in its first claim a declaratory judg-

ment that the competitive bidding law in K.S.A. § 19–214(a) applies to the bidding for the Trustees' hospital construction work, that ICI submitted the "lowest" and "best" bid, that the defendants violated this statute in awarding the contracts to other bidders, and that ICI is entitled to the Project contract. In its second claim, the plaintiff alleges that K.S.A. § 19–214(a) gives it a property interest protected by the 14th Amendment, that the defendants denied the plaintiff of this property interest without due process of law in not awarding it the contract, that the defendants acted intentionally, recklessly and under color of state law in violating the plaintiff's right to due process, and that the plaintiff has been injured in an amount exceeding $75,000. In its third claim, the plaintiff alleges it is entitled to a preliminary injunction. Only ICI's second claim purports to allege a federal cause of action that would sustain the exercise of federal jurisdiction. If the plaintiff is unable to assert a viable cause of action under 42 U.S.C. § 1983, the court would decline to exercise supplemental jurisdiction over any remaining state law claims.

## 42 U.S.C. § 1983

■ To prevail on a claim under 42 U.S.C. § 1983, a plaintiff "'must allege both the deprivation of a federal right and that the alleged action was taken under color of state law.'" *Southern Disposal, Inc. v. Texas Waste Management,* 161 F.3d 1259, 1265 (10th Cir.1998). The Fourteenth Amendment proscribes a state from, *inter alia,* depriving a party of "property without due process of law." U.S. Const. amend. XIV, § 1. To state a claim for a procedural due process violation, a plaintiff must allege the state denied him of a definite liberty or property interest without affording him fair procedures. *Southern Disposal,* 161 F.3d at

1265. The plaintiff here alleges it was denied a property interest without due process of law. Procedural due process claims of disappointed bidders on public contracts are frequently made under the federal civil rights statute, 42 U.S.C. § 1983. *See, e.g., L & H Sanitation, Inc. v. Lake City Sanitation, Inc.,* 769 F.2d 517 (8th Cir.1985); *Sowell's Meats & Services, Inc. v. McSwain,* 788 F.2d 226 (4th Cir. 1986); *see also* Kathleen M. Dorr, Annotation, *Standing of disappointed bidder on public contract to seek damages under 42 U.S.C. § 1983 for public authorities' alleged violation of bidding procedures,* 86 A.L.R. Fed. 904 (1988).

### Property Interests in General

The Supreme Court has defined a constitutionally protected property interest as a "legitimate claim of entitlement" to some benefit. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). A property interest is more than "an abstract need or desire," or a "unilateral expectation." *Id.* "A property interest 'is an individual entitlement grounded in state law, which cannot be removed except for cause.'" *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). "Due Process is not an end in itself. Rather, the constitutional purpose of Due Process 'is to protect a substantive interest to which ... [a party] has a legitimate claim of entitlement.'" *Hyde Park Co. v. Santa Fe City Council,* 226 F.3d 1207, 1210 (10th Cir.2000) (quoting *Olim v. Wakinekona,* 461 U.S. 238, 250, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983)).

■ Property interests are not created by the Constitution, but are created and defined by rights under state law that support claims of entitlement to those benefits. *Roth,* 408 U.S. at 577, 92 S.Ct. 2701. Property interests may stem from state statutes, local ordinances, existing rules,

contractual provisions or mutually explicit understandings. *Id.; Perry v. Sindermann*, 408 U.S. 593, 602, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). The existence of a property interest is a question of law. *See Tarabishi v. McAlester Regional Hosp.*, 827 F.2d 648, 651 (10th Cir.1987).

### Applicable Kansas Statutes on Hospital Construction

The plaintiff ICI relies on the Kansas competitive bidding statute, K.S.A. § 19–214, that governs the construction of county buildings as the independent source providing its legitimate claim of entitlement.[2] This statute reads:

> **19–214. Awarding of certain contracts; public lettings; bond; exemptions.** (a) Except as provided in subsection (b) and in K.S.A. 19–216a, all contracts for the expenditure of county moneys for the construction of any courthouse, jail or other county building, or the construction of any bridge in excess of $10,000, shall be awarded, on a public letting, to the lowest and best bid. . . .

The plaintiff insists this provision applies here because the project involves a contract for the expenditure of county funds and for the construction of a county building.

■ The defendants argue that K.S.A. § 19–4614 is the more specific statute governing the construction of county hospital buildings. This statute reads:

> **19–4614. Same; construction projects; bids.** No hospital building or addition shall be erected or constructed until the plans and specifications have been made therefore, adopted by the board and approved by the commission, and bids advertised for according to law for other county buildings.

Speaking specifically to the construction of hospital buildings, this statute only incorporates the advertising requirements that govern bids for the construction of other county buildings. These advertising requirements are found in K.S.A. § 19–215. More importantly, K.S.A. § 19–4614 does not limit the Trustees' discretion in awarding construction projects and does not refer to or incorporate the requirement in K.S.A. § 19–214 that a project contract be awarded to the lowest and best bid. When there is no statutory restriction on the criteria for awarding government contracts, the entity has the discretion to "contract with whomever is determined to be the most qualified for the work." *Case Bros. Co., Inc. v. City of Ottawa*, 226 Kan. 648, 651, 602 P.2d 1316, 1319 (1979). Under Kansas law, a disappointed bidder in these circumstances has no cause of action when the governmental entity also reserves the right to reject any or all bids. *Id.*

Chapter 19 of the Kansas Statutes Annotated covers "Counties and County Officers." Article 2 of Chapter 19 addresses "County Commissioners" while Article 46 speaks to "Hospitals and Related Facilities." As demarcated and labeled in the Kansas Statutes Annotated, the provisions from K.S.A. §§ 19–201 through 19–243 address the "POWERS AND DUTIES" of county commissioners. Consequently, K.S.A. § 19–214 is intended to address the county commissioners' power and duties in awarding certain contracts.

In contrast, Article 46 of Chapter 19 lays out the state law on county hospitals, including the county commissioners' duty to provide for a hospital board to manage and control the county hospital. K.S.A. § 19–4605(a). The powers and duties of

---

**2.** The plaintiff has not identified nor argued any mutual explicit understandings as the source of any alleged property interest. The plaintiff relies exclusively on the terms of K.S.A. § 19–214.

the board are set forth in K.S.A. § 19–4610, including the adoption of "such by-laws and rules and regulations for the management and control of the hospital as it deems necessary" and "the exclusive control of the expenditures of all hospital moneys." K.S.A. § 19–4610(a). "The board is charged with the supervision, care and custody of all hospital property." *Id.* As the Kansas Attorney General has opined, it has been "generally recognized that a county hospital board enjoys a degree of autonomy free from direct control by the board of county commissioners: '[t]he hospital board is more than an agent of the county and underlying authority for the hospital is not the board of county commissioners but is rather the legislature....' Attorney General Opinion No. 88–31." XXIX Kan. Op. Atty. Gen. 46, Kan. Atty. Gen. Op. No. 95–110, 1995 WL 708225 at *3 (Kan.A.G. Nov. 1, 1995).

As for hospital construction projects, the county commissioners' role is limited to approving plans and specifications under K.S.A. § 19–4614 and authorizing the issuance and sell of revenue bonds under K.S.A. § 19–4616. The title of all hospital property, however, vests in the county. K.S.A. § 19–4624. Nonetheless, Kansas law appears to give the board of trustees the authority to contract for construction projects subject only to the requirements in § 4614 that (1) the commissioners approve plans and specifications and (2) that the bids are advertised "according to the law for other county buildings." The court

agrees with the defendants that the latter requirement regarding advertisement of bids refers only to K.S.A. § 19–215. *See* XXXI Kan. Op. Atty. Gen. 15, Kan. Atty. Gen. Op. No. 97–33, 1997 WL 156537 (Kan. A.G. Mar. 31, 1997) (Interpreting similar language in K.S.A. § 80–2514, the Attorney General opined that "the only law for county buildings that the foregoing statute [K.S.A. § 80–2514] refers to is K.S.A. § 19–215 which sets forth advertising requirements for bid letting of county buildings.").[3]

■ Because there are specific statutes governing county hospitals and construction projects involving county hospitals and because these statutes give the authority to the hospital board of trustees to contract for such projects and do not incorporate or reference any other provisions on bidding procedures, the court finds that K.S.A. § 19–214 which sets forth the competitive bidding law governing contracts awarded by county commissioners is inapplicable here. For that matter, the court also believes the specific statute at K.S.A. § 19–4614 relating to the construction of a particular class of county buildings, *i.e.* hospitals, prevails over the general statute, K.S.A. § 19–214, governing the construction of county buildings generally. *See Seltmann v. Board of County Commissioners,* 212 Kan. 805, 810–811, 512 P.2d 334 (1973). Indeed, there would have been no need for K.S.A. § 19–4614 to incorporate the advertising requirement from K.S.A. § 19–215 for any

---

**3.** The plaintiff highlights "other" in K.S.A. § 19–4614 ("bids advertised for according to law for other county public buildings") that is missing from K.S.A. § 80–2514 ("bids advertised for according to law for county buildings"). The court fails to see how this difference in language favors the plaintiff's position. "Other" cannot be construed in § 4614 so as to incorporate more than the advertising requirements appearing in K.S.A. § 19–215. While "other" certainly shows the

Kansas legislature understood county hospitals to be a county building, it also plainly demonstrates the legislature's intent to treat differently a board of trustee's contracting procedures for hospital construction projects by incorporating only some of the statutory public letting requirements governing the construction of "other" county buildings under the county commission's direct supervision.

hospital construction project, if the bidding requirements governing the commissioners at K.S.A. § 19–214, *et seq.* were already applicable by virtue of the hospital being a county building. The court attaches no meaningful significance to the fact that the contract between Murray and the Trustees required the subcontract work to be awarded to the lowest and best bid. Whatever their reasons for wanting a competitive bidding procedure, such a provision does not necessarily show any understanding on their part regarding the application of K.S.A. § 19–214. Speculation over the parties' reasons for employing a competitive bidding process here is insubstantial proof of an industry's understanding of statutory obligations. Thus, the court finds that plaintiff has not shown K.S.A. § 19–214[4] to be applicable here and that the plaintiff is unable to avail itself of its terms in arguing a property interest.

In the absence of statutory conditions requiring a contract to be awarded to the lowest bidder, a public entity "may exercise an unlimited discretion" in awarding the contract "with whomever it determines to be the most qualified for the work."

*Case Bros. Co., Inc. v. City of Ottawa,* 226 Kan. at 651, 602 P.2d 1316. In that decision, the Kansas Supreme Court also followed the general rule that "[w]here a public agency's invitation to bid specifically gives to the public authority the right to reject any or all bids, ... such a provision means exactly what it says and that, where a low bid is rejected, the low bidder is thereby precluded from any right to claim a binding contract." *Id.* Thus, the inapplicability of K.S.A. § 19–214 leaves the plaintiff ICI without any basis in Kansas law for asserting a property interest as a result of its low bids.

### Property Interest in Being the Lowest Bid

Alternatively, the court will assume that K.S.A. § 19–214 does govern a hospital construction project and requires the contract to be awarded to the lowest and best bid. The plaintiff here claims it had a cognizable property interest in the award of a hospital project contract for certain work for which it allegedly submitted the lowest bid in the first letting, or the lowest bid after breaking down its initial lump sum bid, or the lowest bid on some of the items after value engineering.[5] Solely for

---

4. The plaintiff fires back that without K.S.A. 19–214 "this situation would, in fact, be the only legislatively sanctioned expenditure of public funds that would not require such a process." (Dk. 22 at p. 25). Having cited no authority for this statement, the plaintiff's sweeping argument fails. Because of its limited time and resources, this court has not undertaken the research necessary to prove or disprove this statement. Assuming the statement were true, the court still would not assume the role of a super-legislature and rewrite the law so as to ignore the specific statutes governing county hospital construction projects managed and awarded by hospital boards in favor of the plaintiff's broad construction of the general statutes governing construction projects of county buildings managed and awarded by county commissioners. *See D–1 Constructors, Ltd. v. Unified School Dist. No. 229,* 14 Kan.App.2d 245, 247,

788 P.2d 289 (1990) ("Whatever merit this position may have, we are not at liberty to read into the statute a provision requiring sealed, competitive bidding for contracts for services.").

5. ICI contends that the defendants violated the statute in rejecting all bids and having another public letting after providing all bidders with new value engineering plans. ICI complains this gave competing bidders unfair access to ICI's bid and enabled them to adjust their revised bids accordingly. ICI submits that Attorney General Opinion No. 92–118 "sets forth the correct procedure" in that commissioners may modify contracts with the lowest bidder without rebidding the project. A close reading of that opinion shows that the commissioners' "narrow window" for conducting this procedure is for modifications to the plans and specifications which are not

purposes of this discussion, the court also will assume that ICI did submit the lowest bid in one or more of these instances.

■ The analysis of a property interest in a competitive bidding situation begins from the proposition that a property interest depends upon a legitimate claim of entitlement to it, derived from statute, legal rule or mutually explicit understanding and stemming from a source independent of the Constitution such as state law. *Roth,* 408 U.S. at 578, 92 S.Ct. 2701. The Fourteenth Amendment safeguards "the security of interests that a person has already acquired in certain benefits." *Id.* at 577, 92 S.Ct. 2701. Thus, "a protected interest may be found in the benefit whose

enjoyment is sought to be regulated by the procedure." *Rice v. Scott County School District,* 526 N.E.2d 1193, 1196 (Ind.App. 1988).

Other than the federal district court opinion in *Andersen–Myers Co. v. Roach,* 660 F.Supp. 106 (D.Kan.1987), filed some fifteen years ago,[6] this court is unaware of any decision rendered by any federal or state court applying Kansas law which has found a property interest in an unsuccessful bid on a public contract. The Tenth Circuit has said generally that when a governmental entity seeks competitive bids on a project, it does "not thereby create a protected property interest or a 'legitimate claim of entitlement' in the bidders". *Southern Disposal,* 161 F.3d at 1265.

"material" and "could have been made before the contract had been executed." XXVI Kan. Op. Atty. Gen. 44, Kan. Atty. Gen. Op. No. 92–118, 1992 WL 613481 at *3 (Kan.A.G. Sep. 4, 1992). The plaintiff makes no effort to allege any facts showing that the changes resulting from the value engineering done here are not "material" in nature. Even if this procedure were available to the defendants, the Attorney General's opinion does not require such a procedure but only recognizes that it is available in the commissioners' discretion. The court summarily rejects the plaintiff's allegations of unfairness here, because the plaintiff also frustrated the sealed bid process by first submitting a lump-sum bid and then after the bids were unsealed it submitted a new form with its bid broken down by project items. Thus, the plaintiff gained knowledge of competing bid amounts and presumably could have adjusted its break down so as to secure the lowest bid on the larger cost items.

6. For this simple reason, the plaintiff relies extensively on this decision. This court has serious reservations with giving much precedential force to *Andersen–Myers* in light of the Tenth Circuit's more recent decision in *Buckley Const. v. Shawnee Civ. & Cultural Development.,* 933 F.2d 853 (10th Cir.1991). In *Andersen Myers,* the court was left to draw implications from Tenth Circuit opinions that had expressly avoided deciding whether a property interest would arise from the competitive bidding terms of a state statute. The district court then followed the minority

viewpoint represented by the now oft-criticized decision of *Three Rivers Cablevision v. City of Pittsburgh,* 502 F.Supp. 1118 (W.D.Pa. 1980). It should be noted that the Third Circuit in addressing this issue under Pennsylvania law rejected the reasoning in the *Three Rivers* line of decisions as "unpersuasive." *Independent Enterprises v. Pittsburgh Water and Sewer Authority,* 103 F.3d 1165, 1178 n. 11 (3rd Cir.1997). In *Buckley,* the Tenth Circuit expressly said that it had not embraced either viewpoint and eschewed adopting one now in favor of a rule that the issue "should be decided on a case-by-case basis through review of the implicated state law." 933 F.2d at 857–58. Thus, *Buckley* represents the Tenth Circuit's approach for evaluating whether a state's competitive bidding laws as applied and construed create a property interest. The plaintiff makes no effort to fit the analysis used and conclusions reached in *Andersen Myers* within the Tenth Circuit's approach taken in *Buckley.* The court believes the decisions cannot be read harmoniously, because the Tenth Circuit in *Buckley* rejected the proposition that a public entity's discretion to choose the "lowest responsible bidder," as construed under Oklahoma law and similarly construed under Kansas law, is not so limited as to create a property interest. *Cf. Classic Communications, Inc. v. Rural Telephone Service Co., Inc.,* 956 F.Supp. 896, 907–08 (D.Kan.1996).

Though "a significant disagreement in the federal courts [exists] over" this issue, "[t]he majority holds that a disappointed bidder generally does not possess a property interest when the contract is not actually awarded to him." *Buckley Const. v. Shawnee Civ. & Cultural Development*, 933 F.2d 853, 857 (10th Cir.1991). Instead of expressly embracing the majority or minority position on this issue, the Tenth Circuit has taken the approach that it is a matter of deciding whether the state law in question confers a property interest. *Id.* at 857–58 ("To this extent, the question whether entitlement exists should be decided on a case-by-case basis through review of the implicated state law." (citation omitted)).

■ A close look at Kansas law leaves this court convinced that ICI has no legitimate claim of entitlement to a public contract under K.S.A. § 19–214 merely by reason of its allegation that it submitted the lowest bids. Section 19–214 confers discretion on a public body in deciding whether to accept any bids and in deciding which bid to accept. Rather than requiring a commissioners to accept "the lowest and best bid" whenever there is a public letting, the statute directs that in awarding a contract the commissioners must select the "lowest and best bid." This distinction is significant in that this selection requirement is not implicated should the commissioners choose to reject all bids and enter into no contract. Thus, the commissioners under § 19–214 retain the discretion to reject all bids and only when they decide to award a contract must they choose the lowest and best bid.

Kansas courts have long recognized the discretion inherent in deciding which is the lowest responsible bid:

On the other hand, it is insisted that a much wider meaning should be given to the word "responsible," and that, as used in this statute, it includes skill, judgment, and integrity. This view is amply sustained by the authorities. Judge Dillon says: "In determining who is the lowest responsible bidder, or the lowest and best bidder, the duty of the board or officer is not merely ministerial, but *partakes of a judicial character*, requiring the exercise of discretion and judgment. Consideration must be given, not only to the pecuniary ability of the bidders to perform the contract, but also the skill, ability, and integrity necessary to do faithful, conscientious work, and to fulfill the terms of the contract." Section 811. In Abbott on Municipal Corporations, it is said: "As stated repeatedly in cases passing upon this point, the duty imposed to award a contract to the lowest responsible bidder involves a determination of other questions than financial; the business judgment and capacity, skill, responsibility, and reputation of the various bidders, and the quality of the materials proposed to be supplied are all to be taken into consideration." Section 268. And in Elliott on Roads & Streets, the rule is stated thus: "In determining who is the best or lowest responsible bidder, the skill, ability, and integrity of the bidders may be taken into consideration, as well as the amounts of their bids and their pecuniary ability." Section 636. . . . Not only is this rule supported by a multitude of precedents, but it rests in reason. The public interests are much better promoted by faithful performance than by repairs upon or indemnity for defective public work. . . . We conclude that the word "responsible" in the phrase "lowest responsible bidder" was used by the Legislature in the sense in which it had long been interpreted by the courts and text-writers, and must be held to imply skill, judgment, and integrity necessary to the faithful performance of the contract,

as well as sufficient financial resources and ability. (citations omitted).

The next inquiry is how this responsibility is to be determined. Here, again, the authorities speak with practically one voice. The governing body of the city—the mayor and council, or commissioners, as the case may be—must determine the fact, and such determination cannot be set aside, unless the action of the tribunal is arbitrary, oppressive, or fraudulent. High, Ex. Legal Rem. §§ 92; *State ex rel. v. McGrath,* 91 Mo. 386, 3 S.W. 846; *Douglass v. Commonwealth,* 108 Pa. 559; *Madison v. Harbor Board of Baltimore City et al.,* 76 Md. 395, 25 A. 337; *Meffert v. Medical Board,* 66 Kan. 710, 72 P. 247, 1 L.R.A. (N.S.) 811; *Dever v. Humphrey,* 68 Kan. 759, 75 P. 1037. The determination of the question who is the lowest responsible bidder does not rest in the exercise of an arbitrary and unlimited discretion, but upon a bona fide judgment, based upon facts tending to support the determination. *McGovern v. Board of Public Works,* 57 N.J. Law, 580, 31 A. 613; *Bunker v. Hutchinson,* 74 Kan. 651, 87 P. 884; 2 Dillon, Mun. Cor. 811. The statute will not be so interpreted as to afford a cover for favoritism. The city authorities are required to act fairly and honestly, upon reasonable information, but when they have so acted their decision cannot be overthrown by the court. *Williams v. City of Topeka,* 85 Kan. 857, 861–64, 118 P. 864, 866–67 (1911). Thus,

the decision whether a bidder is responsible is committed to a public body's discretion, and the decision must not be "arbitrary, oppressive or fraudulent." *Id.* This holding necessarily informs any reader of Kansas law regarding the broad discretion residing with a commission in the selection of the lowest and best bid.[7] *See Enertech Elec., Inc. v. Mahoning County Com'rs,* 85 F.3d 257, 260 (6th Cir.1996) (the statute requiring "the acceptance of the lowest and best bid" confers the public authority with the "discretion" in making the "qualitative determination" under "all the circumstances" which bid is "both lowest and best.").

In *Buckley,* the Tenth Circuit quoted similar language from an Oklahoma Supreme Court decision on the meaning of "lowest responsible bidder." 933 F.2d at 858. From its reading of that decision, the Circuit concluded:

Thus, the Authority retains broad discretion to determine which contractor is the lowest *responsible* bidder. In making this determination, the Authority is not limited to looking at bids alone. Rather, the term "responsible bidder" encompasses a variety of factors which combine to allow the Authority to choose the contractor who is best able to carry out the requirements of the contract.

933 F.2d at 858. The same can be said about K.S.A. § 19–214. A commission's discretion is broad entailing the consideration of what could be fairly described as all facts lawfully relevant in determining which bidder is best able[8] to perform the

---

7. Neither side argues that the phrase, "lowest and best bid," currently appearing in K.S.A. § 19–214 has a meaning substantially different from the Kansas Supreme Court's construction of "lowest responsible bidder" in *Williams.* Other than observing the use of "bid," not "bidder," in § 19–214, the plaintiff does not argue the relevance of this distinction in this case. As for any difference between "best" and "responsible," the parties do not argue any and this case does not

present the circumstances requiring this analysis.

8. The plaintiff gives the court no reason for believing that the determination here of which bidder is "best able" to perform the requirements of the contract is simply a matter of deciding whether a bidder has met the threshold requirements for being a "responsible" bidder. *Cf. Andersen–Myers Co., Inc. v. Roach,* 660 F.Supp. 106, 111 (D.Kan.1987).

contractual requirements at the lowest cost. "When official action is discretionary, 'one's interest in a favorable decision does not rise to the level of a property right entitled to procedural due process protection.'" *Resource N.E. of Long Island v. Town of Babylon,* 80 F.Supp.2d 52, 58 (E.D.N.Y.2000) (No property interest from a statute giving the public body the discretion to select "the most beneficial bid.") (quoting *Walentas v. Lipper,* 862 F.2d 414, 419 (2d Cir.1988), *cert. denied,* 490 U.S. 1021, 109 S.Ct. 1747, 104 L.Ed.2d 183 (1989) (other citations omitted)); *Ferencz v. Hairston,* 119 F.3d 1244, 1247–48 (6th Cir.1997) ("the city's discretion in determining the 'best' bid" was one of the grounds for finding no property interest in remaining on a bid list). The breadth of discretion bestowed here is not constrained by particularized and comprehensive standards, criteria or conditions outlined by statute such that the public decisionmaker acts more like a conduit for distributing benefits to qualified bidders than an officer charged with making a determination that is "judicial in its nature and character." *See Williams,* 85 Kan. at 864, 118 P. 864 (quotation omitted); *cf. Hyde Park Co. v. Santa Fe City Council,* 226 F.3d at 1210 ("'The entitlement analysis centers on the degree of discretion given the decisionmaker.'" (quoting *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence,* 927 F.2d at 1116).)

■ There is no question that competitive bidding statutes in Kansas exist to protect the public, not the bidders. In *Sutter Bros. Constr. Co. v. City of Leavenworth,* 238 Kan. 85, 708 P.2d 190 (1985), the Kansas Supreme Court addressed the purpose of a state competitive bidding statute applying to municipalities. Looking to its own precedent, a general discussion from American Jurisprudence Second and the case law of other jurisdictions, the Court concluded that:

1. A bid in response to a solicitation constitutes no more than an offer and, until its acceptance, a contract does not exist.

2. The purpose of K.S.A. 13–1017, the competitive bidding statute applicable to cities of the first class, is the protection of the public rather than the bidders thereunder. Particularly, the statute is intended to save public funds and to guard against favoritism, improvidence and corruption.

3. An unsuccessful bidder on a public works project may not predicate a cause of action for damages against a public body solely upon an alleged violation of K.S.A. 13–1017. An unsuccessful bidder's remedy is to seek injunctive relief preventing the award of the contract to one not legally entitled thereto.

238 Kan. at 92, 708 P.2d 190. The basis given for these conclusions would support the same conclusions about all other competitive bidding statutes in Kansas, including K.S.A. § 19–214. Unable to argue that it is the intended beneficiary of K.S.A. § 19–214 or that its interest is the one being protected by these provisions, a disappointed bidder cannot rely on this statute as bestowing certain benefits entitled to constitutional protection before any contract has been awarded. *See Koerpel v. Heckler,* 797 F.2d 858, 864 (10th Cir.1986). Moreover, the public purpose of these Kansas competitive bidding statutes like K.S.A. § 19–214 further demonstrates that the award of contracts is not limited to the lowest bidder and that a public body has considerable discretion to choose "the best overall contractor for the job." *See Buckley,* 933 F.2d at 858.

What cannot be found in the *Sutter* opinion is also instructive. There is no statement or holding that the competitive bidding statute was intended to or actually created any private rights in a bidder.

Rather, the court looked to equity in fashioning for a disappointed bidder the limited remedy of promptly pursuing injunctive relief to "prevent[ ] the award of the contract to one not legally entitled thereto." 238 Kan. at 92, 708 P.2d 190. The court ensured that the remedy was not only compatible with but actually furthered the purpose of protecting the public. A bidder does not acquire a property interest by having this limited equitable remedy and pursuing it. *See Grand Canyon Pipelines, Inc. v. City of Tempe,* 168 Ariz. 590, 593, 816 P.2d 247, 250 (1991). "Further, if there is no right to damages for lost profits to a contractor unjustly denied a contract award, it follows that there is no right to damages for an alleged procedural due process violation in respect to the awarding process." *Id.*

As K.S.A. § 19–214 has been construed here, ICI retained only a unilateral hope of being awarded the contract based on its initial bid and later revised bids. The considerable and substantial discretion residing with a public authority under this statute undermines any legitimate claim of entitlement by the disappointed lowest bidder. Because Kansas competitive bidding laws do not exist to benefit bidders, the lowest bidder is unable to assert any interest thereunder entitled to constitutional protection. For these reasons and the others expressed above, the court finds that the plaintiff has shown no protected property interest under K.S.A. § 19–214.

## CONCLUSION

The court finds that the plaintiff can prove no set of facts in support of his § 1983 claim which would entitle him to relief. Having dismissed ICI's claim over which this court has original jurisdiction, the court declines to exercise supplemental jurisdiction on the plaintiff's state law claims against the defendant. 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."). When the federal claims have dropped from the case, the seminal teaching of *Gibbs* is that the most common response is to dismiss the state law claims without prejudice. *Roe v. Cheyenne Mountain Conference Resort, Inc.,* 124 F.3d 1221, 1237 (10th Cir.1997). The parties do not argue any unique circumstances, and the court finds none, that would justify exercising supplemental jurisdiction over plaintiff's state law claims against the defendants.

IT IS THEREFORE ORDERED that the motions to dismiss or, in the alternative, motions for summary judgment filed by the defendant J.P. Murray Company, Inc. (Dk.16) and the defendant Board of Trustees of Newman Memorial County Hospital (Dk.20) are granted as to the plaintiff's claim under 42 U.S.C. § 1983;

IT IS FURTHER ORDERED that the court declines to exercise supplemental jurisdiction over the plaintiff's state law claims and dismisses the same without prejudice.